Y. D. Dugout, Inc. *vs.* Board of Appeals of Canton.

Norfolk. January 7, 1970. — February 10, 1970.

Present: Wilkins, C.J., Cutter, Kirk, Spiegel, & Reardon, JJ.

*Zoning,* "Site plan approval," Special permit.

Under G. L. c. 40A, §§ 2 and 4, a town properly regulated commercial uses permitted "as of right" in nonresidential zoning districts through a section of the zoning by-law providing that such uses must be "in conformity with a site plan" approved by the board of appeals showing specified features, that in dealing with a site plan the board should "conform to all requirements of procedure applicable to a board of appeals when deciding requests for special permits" under c. 40A, § 4, and that in considering the site plan the board should assure protection of specified aspects of the public interest "to a degree consistent with a reasonable use of the site for the purposes permitted." [31]

Under a zoning by-law providing that commercial uses permitted in nonresidential districts "as of right" must be in conformity with a site plan approved by the board of appeals in order to assure protection of the public interest "to a degree consistent with a reasonable use of the site for" such purposes, establishing standards in the public interest, and indicating a regulation of uses and the imposition of terms and conditions rather than a prohibition of uses, a complete disapproval by the board of a site plan for a restaurant in a business district, a use permitted therein "as of right," for reasons relating to parking, traffic, and nuisance problems, was in excess of the board's authority where no detriment to the neighborhood or the public justified such disapproval. [31–32]

Bill in equity filed in the Superior Court on June 30, 1967.

The suit was heard by *Kalus*, J.

*Eugene J. Galligan*, Town Counsel, for the defendant.

*John E. Bradley* for the plaintiff.

CUTTER, J.  This is an appeal by the town's board of appeals (the board) from a final decree determining that certain aspects of the town's zoning by-law are invalid and that the board's refusal to approve a site plan filed by Y. D. Dugout, Inc. (Dugout) was "arbitrary and capricious." The evidence is reported.  The trial judge made voluntary findings and rulings.

Dugout proposes to erect a building for a restaurant or café on land (the locus) at 4 Royall Street, Canton.  The owners of the locus desire approval of Dugout's project.  The locus is in an area zoned for business purposes.[1]  On May 12, 1967, Dugout applied to the board of appeals for "site plan approval" of a proposed new building under the town zoning by-law, § IV D.

The Canton zoning by-law (§ II A) establishes classes of districts, including (among others) business districts, limited industrial districts, and industrial districts.  The term "Non-Residential Districts" (§ II B) refers to any one of these "three types of use districts." Section III of the by-law prescribes use regulations for each class of district. The provisions (§ III D) governing "Business District Uses" read in part (emphasis supplied): "1. . . . In a business District, the following uses are permitted *as of right*: . . . (j) Restaurant or similar place for the serving of food or beverages only to persons inside a completely enclosed building, subject to the condition that no mechanical or live entertainment is regularly furnished except as hereinafter authorized (in Section III-D 3)."[2]

---

[1] On May 18, 1967, the board of appeals denied without prejudice an application for a variance as "not required."

[2] The by-law in evidence contains no § III D 3. The intended reference is probably to § III D 2 which reads: "2. Additional Uses by Special Permit Only.  In a Business District outside the Central Business Area, the Board of Appeals may, in a specific case, issue a special permit for any of the following additional uses in this District where not detrimental to the normal use of any adjacent property in a Residential District. . . .  (b) The regular furnishing of entertainment at a restaurant or similar place.  (c) Hotel or motel."

Section IV of the by-law contains "Special Provisions in Non-Residential Districts," among which is subsec. D, upon which the board of appeals places principal reliance. Section IV D reads in part: "Site Plan Approval. 1. Requirement for Site Plan. In all Non-Residential Districts, no *commercial building* shall be constructed or externally enlarged, and no *commercial* use shall be expanded in ground area . . . except in conformity with a site plan bearing an endorsement of approval by the Board of Appeals"[3] (emphasis supplied).

Under § IV D 3, applications for site plan approval are to be submitted directly to the board of appeals. The board then is to refer the application to the planning board which may report upon it. After receipt of the planning board's report or after the lapse of thirty-five days without such a report, the board of appeals may take action which (emphasis supplied) "shall conform *to all requirements of procedure* applicable to a board of appeals when deciding requests for *special permits* under . . . [G. L. c.] 40A, as amended (including the requirements thereof for public notice and hearing)." Under § IV D 4, "[i]n considering a site plan . . . the Board of Appeals shall assure, *to a degree consistent with a reasonable use of the site for the purposes permitted or permissible* by the regulations of the district in which located: (a) Protection of adjoining premises against detrimental or offensive uses on the site. (b) Convenience and safety of vehicular and pedestrian movement

---

[3] Section IV D 1 then proceeds, "Said site plan shall show, among other things, all existing and proposed buildings, structures, parking spaces, loading areas, driveway openings, driveways, service areas, and other open uses, all facilities for sewage, refuse and other waste disposal and for surface water drainage, and all landscape features (such as walks, fences, walls, planting areas and greenbelts) on the lot." Section IV D 2 provides that, for the purposes of § IV, "the following uses shall be considered as commercial purposes and all buildings . . . occupied by . . . one or more of such uses shall be considered as *commercial buildings:* (a) Any of the uses herein set forth as permitted as of right or permissible on special permit in any Non-Residential District but *not* herein set forth as permitted or *permissible in any Residential District*" (emphasis supplied). Restaurant use does not appear to be permitted in any residential district. Section IV A 1, like § IV D, effects some modification of § III by its provision that in a "Business District . . . all uses permitted *as of right or permissible on special permit,* and all uses accessory thereto, shall be conducted within a completely enclosed building" (with exceptions not relevant; emphasis supplied).

within the site, and in relation to adjacent streets, property or improvements.[4]  (c) Adequacy of the methods of disposal for sewage, refuse and other wastes resulting from the uses permitted or permissible on the site, and the methods of drainage for surface water.  (d) Adequacy of space for the off-street loading and unloading of vehicles, goods, products, materials and equipment incidental to the normal operation of the establishment" (emphasis supplied).

The board of appeals on June 8, 1967, denied site plan approval for the locus, and in its decision set out matters summarized in the margin.[5]  The board's principal findings were as follows: "1. Royall Street is primarily used for residential purposes.  2. The parking problems . . . on Royall Street are of long standing.  3. . . . Dugout . . . [does] not [now] provide any parking . . . .  4. The proposed . . . [plan] would provide some parking facilities but the entrance area would be on Royall Street, a narrow street.  5. The entrance area would be an inducement to further parking on Royall Street and aggravate a present

[4] This standard, applicable to the action of the board of appeals with respect to a site plan, should be read with § V A 3 of the by-law: "Off Street Parking in All Districts — A. Parking Requirements.  In all districts, there shall be provided and maintained improved off-street automobile parking spaces in connection with the erection, establishment or increase by units or dimensions of buildings, structures and uses, in the following amounts. . . . 3. For places of public assembly, including meeting halls, auditoriums and stadiums, libraries, museums, art galleries, community buildings, private clubs and lodges, funeral parlors, restaurants and other eating and drinking establishments, theatres, bowling alleys, dance halls and other amusements, bus depots and other passenger terminals — one parking space for each four (4) seats.  Where . . . no fixed seats are used (as in a terminal or dance hall) each twenty (20) square feet of public floor area shall equal one seat." Other appropriate standards (not here relevant) for off-street parking spaces are required for premises of different types, e.g. family dwellings, places with sleeping accommodations, recreational facilities, retail stores and offices, other business uses, and industrial properties.  The board's findings on Dugout's application for a variance show a seating capacity of 104 persons for its new building.  Under § IV D 5, the board may retain power to modify or amend its approval of a site plan.

[5] The locus, in a business district, is occupied by a condemned house.  Under the site plan the house would be supplanted by a building thirty-two feet long and fifty feet wide on a lot eighty-seven feet by 160 feet including a parking space for twenty-six vehicles, to be entered from Royall Street. The locus abuts a residential area.  Dugout, it appears, conducts its present operations on premises "next door to" the locus.  The board referred to evidence before it of serious traffic congestion on Royall Street and of noise from Dugout's old building, and of complaints from owners of neighboring residences about Dugout's present operations.

poor situation. 6. The adjoining premises cannot be adequately protected against . . . noise, loud music, drunkards, parking illegally, blocking of safe passage along Royall Street. . . . 8. The entrance way on Royall Street is detrimental to the area residents and lessens the convenience and safety of vehicular and pedestrian movement in relation to adjacent streets, property, and improvements."

1. The trial judge, in setting aside the board's decision, first ruled, in effect, that the provision (in § IV D of the by-law) for site plan approval went beyond the authority of the town under G. L. c. 40A to give to its board of appeals power to grant variances and exceptions from the general provisions of its by-laws. He concluded that § IV D in effect gave to the "[b]oard power to limit . . . the type [of] business that might be operated in an area . . . designated for business" by imposing additional unauthorized restrictions.

Section III D 1, presumably adopted pursuant to the general zoning power described in G. L. c. 40A, § 2, defines the type of uses permitted "as of right" in a business district. Section III D 2 (fn. 2) indicates certain additional uses which the board of appeals may allow in a business district "where not detrimental to the normal use of any adjacent [residential district] property." Section III D, however, does not contain the complete by-law restrictions upon the use of "Non-Residential Districts" for § IV also prescribes applicable regulations. As already noted, § IV D requires that approval (by the board of appeals) of a site plan be given before any construction or enlargement of a commercial building in a business district after the board's determination that the standards set out in § IV D 4 have been met. This, in effect, requires that the use of land in a business district shall meet the following requirements. (1) The use must be permissible either as of right or by special permit under § III D. (2) If the use is permitted only by special permit, the board of appeals must determine that the general standards for granting a special permit for that use have been satisfied. (3) After opportunity for consideration of a site plan by the planning board, the

board of appeals (complying with the procedural require-
ments of G. L. c. 40A, § 4),[6] in all instances involving a
"commercial building," must determine that the further
standards contained in § IV D 4 have also been met in the
particular case.

The purpose of § IV D 4 is obviously to ensure, not
only that the use of land in Non-Residential Districts
complies with the principal general use regulations of
the by-law, but also that each particular proposed commer-
cial building avoids injury to aspects of the public interest
reasonably specified in § IV D 4. The town, we assume, in
its by-law (1) might have defined geographically the busi-
ness zone in which Dugout seeks to put up its café and then
(2) might have provided in terms that the area could be
used only for residential purposes and, upon special permit,
also for the commercial purposes set out in § III D, 1 and 2,
provided that the standards set out in that section and
§ IV D 4 were met. All nonresidential use of the defined
area then would clearly have been a matter of special
permit granted in accordance with standards stated in the
by-law. If these were sufficient to guide the action of the
board of appeals, this would have been a valid traditional
type of exception described in G. L. c. 40A, § 4 (fn. 6).
See e.g. *Burnham* v. *Board of Appeals of Gloucester,* 333 Mass.
114, 116–119; *Coolidge* v. *Planning Bd. of No. Andover,*
337 Mass. 648, 650–651; *Shoppers' World, Inc.* v. *Beacon
Terrace Realty, Inc.* 353 Mass. 63, 68–70; Rathkopf, Zoning
and Planning, pp. 54–1 to 54–30; Anderson, Am. Law of
Zoning, §§ 15.17 – 15.21; note, 82 Harv. L. Rev. 668,

---

[6] Section 4 (as amended through St. 1966, c. 199) reads in part: "A zon-
ing . . . by-law may provide that exceptions may be allowed to the regu-
lations . . . contained therein, which shall be applicable to all of the districts
of a particular class and of a character set forth in such . . . by-law. Such
exceptions shall be in harmony with the general purpose and intent of the
. . . by-law and *may be subject to general or. specific rules therein contained.*
The board of appeals . . . of such . . . town . . . may, in appropriate
cases and *subject to appropriate conditions and safeguards,* grant to an applicant
a special permit to make use of his land *or to* erect and *maintain buildings or
other structures thereon* in accordance with such an exception. Before granting
such a special permit the board of appeals . . . shall hold a public hearing
thereon, notice of which shall be given in accordance with" § 17 (emphasis
supplied).

671–676. Cf. *Weld* v. *Board of Appeals of Gloucester,* 345 Mass. 376, 378–379.

We think that, in substance, the Canton by-law may be viewed (a) as prescribing valid general rules for application to commercial buildings and uses in Non-Residential Districts which include satisfaction of the standards stated in § IV D 4, and (b) is equivalent to permitting any commercial building construction in such districts only upon special permit if the board determines there is compliance with § III and also with the standards set out in § IV, especially subsec. D 4. The authorities already cited indicate that towns may adopt reasonably flexible methods, consistent with the substantive and procedural provisions of c. 40A, § 4 (fn. 6), of allowing boards of appeals to adjust zoning regulation to the public interest in accordance with sufficiently stated standards. We look at the substance as well as the form of the attempted regulation and conclude that the method of regulation adopted by § IV D is permitted under c. 40A, §§ 2 and 4.

2. We next consider whether, under § IV D 4, the board of appeals erred in its completely refusing site plan approval. The board's authority to enforce compliance with § IV D 4 is only to "assure" protection of the public interest "to a degree consistent with a reasonable use of the site for the purposes permitted or permissible by the regulations of the district" in which the regulated land lies.

This language implies regulation of a use rather than its prohibition. It guides us in interpreting the later portions of § IV D 4 as contemplating primarily the imposition, for the public protection, of reasonable terms and conditions upon the commercial use of land zoned for business.

On the facts of the present case, in any event, § IV D 4 warrants no more than the imposition of reasonable conditions in connection with the approval of a site plan.[7] We

---

[7] The planning board, for example, recommended (1) shielded lighting facilities for the parking area; (2) fencing the entire lot except for the Royall Street frontage and on the west fence, providing material to reduce headlight glare on residences nearby; and (3) requiring the applicants to show on the site plan the proposed drainage and sanitary disposal system.

assume (a) that, to prevent traffic congestion where a lot in a business zone has frontage only on a narrow street or where particularly heavy use of commercial premises is likely, the board of appeals could specify parking spaces in addition to the minimum number called for in any event by § V A 3 of the by-law (fn. 4) if special conditions affecting particular land and adjacent ways made that appropriate, or (b) that some form of screening (to reduce noise, light, dust, or other injury) might be required for particular commercial uses, or (c) that the board might make other appropriate provisions to protect the neighborhood and the public from unreasonable harm. The evidence shows no such detriment from Dugout's proposed use for a restaurant or café as would justify prohibition of the project completely under a regulatory provision no more explicit than that in § IV D 4. [8]

3. The final decree is reversed because the trial judge should not have declared § IV D invalid. Because, on the evidence, the board of appeals exceeded its authority in disapproving the site plan for Dugout's restaurant project entirely, a new final decree is to be entered annulling the board's decision and remanding the case to the board for reconsideration in the light of this opinion.

*So ordered.*

---

[8] We do not suggest, of course, that the board of appeals must impose restrictions of the types outlined above or that it could not have required appropriate amendment of the site plan to make it conform to the standards of § IV D 4, e.g. to show a suitable drainage system and other compliance with the planning board's recommendations.