## Daniel Duteau *vs.* Zoning Board of Appeals of Webster & others.[1]

No. 97-P-1979.

Worcester. February 9, 1999. - September 3, 1999.

Present: Kass, Kaplan, & Jacobs, JJ.

*Zoning,* Special permit, By-law, Accessory building or use, Judicial review, Board of appeals: decision, Conditions. *Words,* "External manifestation."

An appeal under G. L. c. 40A, § 17, from the action of a zoning board of appeals was remanded to the board for reconsideration whether the owner of a dwelling was entitled, under the applicable provisions of the zoning by-law, to use the premises as a matter of right to repair small gasoline engines or whether such use was prohibited. [667-670]

CIVIL ACTION commenced in the Superior Court Department on November 21, 1994.

The case was heard by *Christine M. McEvoy,* J.

*Howard J. Potash* for Ronald Kokernak, Jr., & another.

*John A. Mavricos* for the plaintiff.

KASS, J. As presented to the Superior Court judge who heard and decided the case, the controversy was an appeal under G. L. c. 40A, § 17, from the allowance of a special permit by the zoning board of appeals of Webster (board). Upon analysis, no special permit was required. Rather, the question was whether the disputed use could be carried on as matter of right under the zoning by-law, or whether the by-law forbade the use, a question of interpretation for the board. The Superior Court judge decided the grant of the special permit had exceeded the board's authority and annulled the grant. As the standard of judicial review of interpretations by a board of appeal of its own town's zoning code differs somewhat from that applicable to the grant

[1]Ronald Kokernak, Jr., and Debra Demond.

or denial of a special permit, we reverse the judgment and remand the case for further action by the board.[2]

1. *Facts.* Debra Demond and her husband Ronald Kokernak, Jr. (to whom we shall refer as "Kokernak"), own and live in a multifamily residential house[3] at 10 Eastern Avenue, Webster (locus). Situated next to the locus at 6 Eastern Avenue is the property of Daniel Duteau, who brought the action against the board that went to judgment and is before us on appeal. Both properties are located in a multifamily residential use district under the Webster zoning by-law. See § 6 of the Webster zoning by-law. Uses permitted in a multifamily district include all uses allowed in a single family district. Among those allowed uses under § 6, District 1-1.(f), are "[a]ccessory uses customarily incidental to a permitted main use on the same premises, including but not limited to the following:

> "(2) Use of premises or building thereon in connection with his trade by a resident carpenter, electrician, painter, plumber or other artisan, provided however that there shall be no external manifestation of said use . . . ."[4]

Beginning in 1994, Kokernak used a metal garage building (60' x 42') for the repair of gasoline powered engines, such as lawnmowers, chainsaws, and snow blowers. His neighbor Duteau wrote to the building inspector on August 15, 1994, asking him to order Kokernak to cease that use on the ground that it

[2]After judgment entered on June 25, 1997, in the Superior Court, Ronald Kokernak, Jr., and Debra Demond Kokernak on August 26, 1997, filed with the Superior Court an action under G. L. c. 231A seeking a declaration that they were entitled to use their property for a small engine repair shop as matter of right under the zoning by-law. By that time, Debra and Ronald had filed an appeal from the judgment in the first case. A judge of the Superior Court stayed proceedings in the declaratory judgment action pending disposition of the appeal. At oral argument, the parties requested that in considering the case we take the actions as joined. There is no final order in the declaratory judgment action and, therefore, nothing for us to review. An appeal would be premature. *Rollins Envtl. Servs., Inc.* v. *Superior Ct.*, 368 Mass. 174, 177-179 (1975). We shall, however, attempt to offer some guidance as to how that case may be brought to completion. The declaratory judgment named the building inspector of Webster as the defendant. Debra Demond Kokernak is the same person as the Debra Demond named as a defendant in the first case.

[3]The record leaves us guessing whether it is a two-family, three-decker, or larger apartment house.

[4]An exception to the external manifestation proviso relates to signs and is not relevant to this case.

was unlawful. Duteau called to the building inspector's atten-
tion that, in 1989, Kokernak had applied for and been refused
permission by the board to so use the premises. The building
inspector notified Kokernak in writing that he was in apparent
violation of zoning regulations and asked him to respond to him
within ten days.

Kokernak appears to have done so and, within three weeks
after the building inspector had written to him, filed an applica-
tion with the board for a special permit allowing him to carry
on his small engine repair business. As we shall develop in the
discussion portion of this opinion, this was a mistaken choice of
remedy. The board appears to have recognized this because in a
decision dated October 11, 1994, the board responded to the
Kokernak application not with the grant of a special permit but
the grant of a "favorable finding to allow the repair of gasoline
engines at the premises of [*sic*] 10 Eastern Avenue, Webster,
Ma." Reclassifying the nature of the relief sought was within
the board's authority as any interested parties had adequate
notice of the substance of what was wanted by Kokernak, viz.,
to use the locus for small engine repairs. Compare *Shoppers'
World, Inc.* v. *Beacon Terrace Realty, Inc.*, 353 Mass. 63, 68-69
(1967), and *Healy* v. *Board of Appeals of Watertown*, 356 Mass.
130, 131 (1969), with *Pelletier* v. *Board of Appeals of Leomin-
ster*, 4 Mass. App. Ct. 58, 61-62 (1976). In support of that
determination, the board made the following subsidiary find-
ings:

> "1. The area in question is zoned multi-family residential;
>
> "2. The proposal would be within the confines of a garage
> existing on site;
>
> "3. That the board restricts premises by disallowing the
> repair of automobiles for fees/payment[;]
>
> "4. That the by-laws allow for the use of premises for
> home occupations;
>
> "5. That the board could not find [that] a detriment would
> be the result of the proposal."

On review in accordance with G. L. c. 40A, § 17, a judge of
the Superior Court proceeded on the assumption that the board
had granted a special permit. The judge wrote a detailed deci-

sion annulling the action of the board as beyond its authority. She found Kokernak's engine repair business produced external manifestations in the form of noise. Applying the general criteria for special permits contained in G. L. c. 40A, § 9, as appearing in St. 1975, c. 808, § 3, the judge determined that the board's decision was "not in harmony with the general purpose and intent of the zoning by-law." This was so, the judge ruled, because the noise and flammable substances involved with the engine repair work were detrimental to the health, safety, and comfort of the neighborhood of the locus. Finally, the judge decided, the increased traffic would be contrary to the general purpose and intent of the zoning by-law.

2. *Discussion.* As indicated, the question before the court was a more narrow one than whether a special permit had been lawfully issued. Whether, therefore, that special permit was in harmony with the general purpose and intent of the by-law was not a pertinent question. By enacting a by-law that allows a use as matter of right, the inhabitants of a town have previously resolved, in a legislative sense, considerations of comfort, health, safety, and traffic. More precisely, the question to be decided was whether Kokernak's activity fit within the home artisan activity permitted by § 6, District 1-1.(f)(2).[5] If so, the Kokernaks were entitled to the use they were making of their property as matter of right and required no permit, special or otherwise. By contrast, a special permit concerns a use thought under the zoning code to be potentially acceptable in a zoning district, but only after and subject to review and permission of a permit granting authority, to the end that the use applied for be compatible with the allowed uses in the area in which it is to be planted. *SCIT, Inc.* v. *Planning Bd. of Braintree,* 19 Mass. App. Ct. 101, 109 (1984). Special permits govern that class of uses that lie between those that are prohibited and those that, because they comply with the zoning code in all detail, are allowed as

[5]There is in the record appendix an earlier or later edition of the Webster zoning by-law which contains a category of accessory use, described in § 6, District 1-1.(f), that has the characteristics of a use for which a special permit is required because that section speaks of an "[a]ccessory use which may be permitted by the Board of Appeals in accordance with [c]hapter 40A." That is, some sort of permission from the board is required. The parties do not inform us which by-law is the governing version. We proceed on the basis of the by-law edition that was introduced as Exhibit 1 at trial. In that version a category of accessory use that requires permission from the board has been eliminated.

of right. See Bobrowski, Massachusetts Land Use and Planning Law § 9.1, at 342 (1993).

In this case, whether there was such compliance with the text of the by-law was a matter for interpretation, first by the building inspector, then by the board, and, only thereafter, by a court. See *Neuhaus* v. *Building Inspector of Marlborough*, 11 Mass. App. Ct. 230, 231-234 (1981); *McDonald's Corp.* v. *Seekonk*, 12 Mass. App. Ct. 351, 353 (1981). The board appears to have understood that this was its duty because it struck "special permit" and substituted "favorable finding" on the certificate of relief that it gave to the owners of the locus pursuant to, according to the face of the document, G. L. c. 40A, § 11. Three elements of the board's decision, however, betray a touch of confusion on the board's part about the nature of its decision. First, a certificate of that sort is to be issued only to a recipient of "a variance or special permit, or any extension, modification or renewal thereof." G. L. c. 40A, § 11, as appearing in St. 1975, c. 808, § 3. The board's finding and order were none of those. Second, the third subparagraph of the board's order, "[t]hat the board restricts premises by disallowing the repair of automobiles for fees/payment," has no place in determining whether a property owner's use is permitted as of right. If a use so conforms with the zoning code that it is allowed as matter of right, the board is without authority to impose conditions upon it. To subject all permitted uses to conditions that a board of appeal regards as desirable contravenes the principle that zoning regulations apply equally so that "all land in similar circumstances should be treated alike." *SCIT, Inc.* v. *Planning Bd. of Braintree*, 19 Mass. App. Ct. at 107. Third, if a use is allowed as matter of right, there is no occasion to make a finding, as the board did, that there is no detriment from the use described.

Notwithstanding those diversions by the board, the fact remains that under the by-law there was no basis for granting a special permit, as the parties agreed at oral argument, and the core of the board's decision is that it considered the gas engine repair business as compliant with the home artisan provision, and that the Kokernaks' use required no special permit. Implicit in the board's decision, but not mentioned in it, is a finding that, under the by-law, such noise as the engine repair work produced did not rise to a level of "external manifestation."

It is a not inconsiderable weakness of the board's decision that it contains no analysis of that key phrase in the by-law.

Does external manifestation refer to the visual (other than signs, which are regulated) as well as the auditory? See Anderson, American Law of Zoning § 13.25 (4th ed. 1996). Did the board mean to say that as most home artisans, such as carpenters, plumbers, and electricians, who use power tools or other noise making machines, or silversmiths or sculptors, who pound, also make noise, that noise, therefore, was not an external manifestation that the by-law sought to preclude? Or, as is more likely, did the board think the by-law meant to preclude work that produced persistent and high levels of noise but not sporadic ones, that Kokernak's work fell into the latter category, and that the noise incident to his occupation was not materially greater than would be expected from the home artisan occupations specifically listed, such as carpentry (power saws, power drills, and sanding machines) and plumbing (cutting pipe with power saws)? The presence within the garage building of flammable substances, contrary to the impression of the trial judge, does not strike us as an "external manifestation," particularly as a painter, one of the occupations mentioned as permitted, would almost certainly keep flammable substances as the stuff of his trade. Similarly, some degree of traffic incident to delivery of materials is inevitably incident to a home artisan occupation and cannot reasonably be seized upon, as the plaintiff has, as an external manifestation.

We think it necessary that the case be remanded to the board for reconsideration whether Kokernak is entitled to use the premises for the repair of small engines. The board needs to make more definitive findings as to the noise generated by engine repair work, touching on such issues as how frequently noise is generated, the duration of that noise and its sound level, and whether, in the view of the board, that is or is not an external manifestation within the meaning of Webster's by-law. In that regard, although interpretation of the by-law is in the last analysis a judicial function, deference is owed to a local zoning board's home grown knowledge about the history and purpose of its town's zoning by-law. See *Pendergast* v. *Board of Appeals of Barnstable*, 331 Mass. 555, 557-558 (1954) (dealing with a variance but making the point that "a local board familiar with local conditions" can deal understandingly with questions arising under a local by-law); *Geryk* v. *Zoning Appeals Bd. of Easthampton*, 8 Mass. App. Ct. 683, 684-685 (1979) (again arising in context of denial of a variance but emphasiz-

ing deferential attitude of courts toward local decision); *ACW Realty Mgmt., Inc.* v. *Planning Bd. of Westfield*, 40 Mass. App. Ct. 242, 247-248 (1996) (dealing with denial of special permit). Disposition of this enforcement case is likely to moot or govern the declaratory judgment case (note 2, *supra*).

The judgment is reversed and a new judgment is to enter remanding the case to the zoning board of appeals of Webster for further action consistent with this opinion.

*So ordered.*