# KCI Management, Inc. *vs.* Board of Appeal of Boston.

No. 99-P-504.

Suffolk. March 16, 2001. - March 20, 2002.

Present: Greenberg, Beck, & Duffly, JJ.

*Limitations, Statute of. Zoning,* Person aggrieved, Greenbelt overlay district, Building permit, Special permit.

A Superior Court judge correctly concluded that a purchaser of land subject to a restriction at the time of its purchase timely filed, pursuant to § 11 of Boston's zoning enabling act, its challenge to regulations establishing a greenbelt overlay district as applied to the purchaser. [257-258]

A regulatory scheme establishing a greenbelt overlay district, as that term is defined by art. 29 of the Boston Zoning Code, was valid, where the governing greenbelt regulations permissibly imposed conditions, through site plan review, on uses that otherwise were permitted as of right in the underlying district. [258-263]

The board of appeal of Boston exceeded its authority in disapproving a plan by the purchaser of land on which single family homes would be built partially within a greenbelt protection overlay district, as that term is defined by art. 29 of the Boston Zoning Code, where the board failed to set forth reasonable terms and conditions on the proposed use. [263-265]

Civil action commenced in the Superior Court Department on April 29, 1997.

The case was heard by *Herman J. Smith, Jr.,* J., on a motion for summary judgment.

*Kabrina Krebel Chang* for the defendant.

*Nicholas J. Nesgos* for the plaintiff.

Duffly, J. Boston's board of appeal (board) has appealed from a judgment declaring invalid portions of a regulatory regime establishing a greenbelt overlay district. Because the governing greenbelt regulations permissibly impose conditions, through site plan review, on uses that otherwise are permitted as of right in the underlying district, we conclude that the overlay scheme is valid. As applied by the board, however, the regula-

tions are invalid because the board failed to impose reasonable terms and conditions on the proposed use, thereby prohibiting uses allowed as of right. We also decide that the appeal of KCI Management, Inc. (KCI), was timely filed.

The underlying action was brought in the Superior Court by KCI, when KCI was denied building and conditional use permits to construct twenty-three single-family homes on a 7.22-acre parcel it owns in the Hyde Park section of Boston. A portion of this parcel lies within a Greenbelt Protection Overlay District (GPOD), as that term is defined by art. 29 of the Boston Zoning Code (code).[1] Article 29 designates Turtle Pond Parkway (and other greenbelt roadways in Boston) and adjacent land falling within 500 feet of the centerline of the roadway as being within a GPOD.[2] The board denied the permits on the basis that KCI "did not advance sufficient reasons to satisfy the [b]oard that all the conditions under which the [b]oard may grant a[] [c]onditional [u]se [permit] under . . . the [c]ode have been met." KCI

---

[1]Article 29, § 29-7, of the code, as amended through July 1, 1987, provides, with respect to the geographic area of that portion of the GPOD in which KCI's parcel is said to lie, as follows: "The following Greenbelt Roadways and their adjacent areas between the boundary lines stated are designated as Greenbelt Protection Overlay Districts: . . . Turtle Pond Parkway, in West Roxbury and Hyde Park: lines parallel to, five hundred (500) feet from, and on each side of the center line of the right-of-way, from the Dedham Parkway to River Street."

The parties apparently agree that some portion of KCI's 7.22-acre parcel lies within this GPOD, although how much the record does not reveal. The Superior Court judge's memorandum of decision and order granting KCI's motion for summary judgment provides: "Because part of the parcel is within the GPOD, the entire parcel is considered within the GPOD." The parties do not raise as an issue on appeal whether the regulations apply to that portion of KCI's parcel lying outside the designated boundaries of the GPOD, and we therefore will assume, solely for the purposes of this decision, that all of KCI's 7.22-acre parcel is subject to art. 29. We think, however, that the issue may fairly be debated. Cf. *Fafard* v. *Conservation Commn. of Reading,* 41 Mass. App. Ct. 565, 570 (1996) (where wetlands protection by-law made no provision for buffer zone, "the commission lacks authority to deny a permit because of potential or secondary impact" on natural vegetation outside of the protected wetland area).

[2]The GPOD regulations apply when a landowner seeking a building permit for a proposed construction project within the GPOD "seeks to erect one or more buildings or structures having a total gross floor area in excess of five thousand (5,000) square feet." Article 29-4 of the code, as amended through November 24, 1987. KCI concedes that it is subject to the GPOD regulations.

argued and the Superior Court judge agreed that, because the property in question is located in a district in which single-family houses are allowed as of right, art. 29, § 29-6 (as inserted on June 1, 1987), of the code impermissibly converts this allowed use into one that is subject to the discretion of the board because it requires an applicant for a building permit first to obtain a conditional use permit.

*Background.* On November 8, 1996, KCI applied to Boston's inspectional services department for building permits to construct twenty-three single family homes as part of a residential development to be located on land that previously had been used as a gravel pit. The application was denied on the ground that, as the property is located within a GPOD, arts. 6 and 29 of the code apply and require KCI to obtain a conditional use permit as a precondition to obtaining a building permit. KCI appealed from the denial of its building permit application to the board. KCI also applied to the board for a conditional use permit.[3] After a hearing, the board voted to deny both KCI's appeal and its conditional use permit application.

On April 28, 1997, KCI filed its complaint alleging that the board's decision had exceeded its authority, and was arbitrary and capricious, because KCI had met all of the applicable conditions entitling it to the permits applied for. The complaint also sought a declaration that the GPOD regulatory scheme violates the uniformity requirement of Boston's Zoning Enabling Act by transforming uses of right into conditional uses.[4] The enabling act appears in St. 1956, c. 665; the uniformity requirement is in § 2 of the enabling act. The board disagreed. It also ruled that KCI was time-barred from challenging the validity of the GPOD by-laws. On KCI's motion for summary judgment, the judge entered partial summary judgment in favor of KCI, ruling that KCI's claim was not barred by the applicable limitations period,

---

[3]Conditional use permit applications to construct within a GPOD are determined by the board. See art. 29, § 29-3(3), and art. 6, § 6-1, of the code.

[4]The complaint also alleges that some of the conditional use permit requirements of art. 29 are not rationally related to the purposes of the GPOD. The judge did not reach this and other claims made by KCI because he declared art. 29, § 29-b, invalid. In the absence of a cross appeal, those issues are not before us.

and declaring that § 29-6 of art. 29 was invalid under principles enunciated in *SCIT v. Planning Bd. of Braintree*, 19 Mass. App. Ct. 101, 107 (1984), in that the requirement that landowners within a GPOD obtain a conditional use permit for any use violated the uniformity requirement of § 2 of the enabling act. We first address the claim that KCI's complaint is time-barred.

*Statute of limitations.* KCI brought its appeal pursuant to § 11 of the enabling act.[5] The parties agree that if § 11 applies, KCI's appeal is timely. The board, however, argues that any challenge to the validity of a zoning regulation enacted by the Boston zoning commission must be brought pursuant to § 10A of the enabling act, requiring an appeal to be filed within thirty days following the effective date of "a decision of the zoning commission approving a zoning map amendment or a zoning regulation or amendment thereof."[6] Any claim of defect in art. 29, § 29-6, the board argues, must have been made not later than July 1, 1987, thirty days after the date the ordinance creating the GPOD was approved.

When a landowner's request for a permit under the code is denied, it is "aggrieved by a decision of [the] board of appeal," and properly must bring its appeal pursuant to § 11 of the enabling act, as KCI did here. The reasons for this were explained in *Lopes v. Peabody*, 417 Mass. 299, 302 n.7, 303 (1994). Although the issue in that case was standing, the court went on to state the principle applicable here, that "a purchaser of land subject to [a] restriction at the time of his purchase has

[5]Section 11 of the enabling act, as amended through St. 1994, c. 461, § 2, provides in relevant part: "Any person aggrieved by a decision of [the] board of appeal . . . may appeal to the superior court . . . provided, however, that such appeal is filed . . . within twenty days after such decision is filed with the building commissioner. . . . Upon an appeal under this section, the court shall hear all pertinent evidence and determine the facts, and upon the facts as so determined, annul such decision if found to exceed the authority of such board or make such other decree as justice and equity may require. The foregoing remedy shall be exclusive; but the parties shall have all rights of appeal as in other civil actions."

[6]Section 10A of the enabling act, as inserted by St. 1987, c. 371, § 2, provides in relevant part: "Any persons aggrieved by a decision of the zoning commission approving a zoning map amendment or a zoning regulation or amendment thereof, or by any procedural defect therein . . . may appeal such decision to the superior court . . . within thirty days after such decision became effective in accordance with the provisions of section three."

. . . every right to challenge the continued application of the restriction. We see no reason to permit challenges to the validity of a zoning enactment only by those landowners who owned land when the zoning provisions first affected it. A rule that a purchaser of real estate takes subject to all existing zoning provisions without any right to challenge any of them would threaten the free transferability of real estate, ignore the possible effect of changed circumstances, and tend to press owners to bring actions challenging any zoning provision of doubtful validity before selling their property. Moreover, such a rule would in time lead to a crazy-quilt pattern of the enforceability of a zoning law intended to have uniform applicability." *Id.* at 303 (citation omitted). See *Palazzolo* v. *Rhode Island*, 533 U.S. 606, 627-628 (2001). KCI acquired its land in 1995. As the challenge here is to the validity of the regulations *as applied* to it, the limitations cannot begin to run before the challenged application has occurred. The judge correctly concluded that KCI's challenge to the regulations was timely filed pursuant to § 11 of the enabling act.

We turn now to the substantive issue: whether the by-laws that together comprise the GPOD zoning scheme violate the uniformity requirement of § 2 of the enabling act.

*The GPOD regulatory scheme.* KCI's parcel is located in the "S-5" subdistrict of an "S" residential district, which allows single-family homes to be constructed as a matter of right. See art. 3, § 3-1, and art 8, § 8-7, of the code. In addition to this traditional Euclidian[7] classification scheme that divides the city of Boston into residential, business, industrial, and other uniform zoning districts, the code also authorizes "special purpose overlay districts." Article 3, § 3-1A. As we have noted, a part of KCI's land lies within such an overlay district, namely the GPOD, established by art. 29 of the code. The stated purposes of the GPOD are:

"to preserve and protect the amenities of the city of

---

[7]The codified system of zoning is often referred to as "Euclidean" zoning, an adjective that is derived not from geometry but from *Euclid* v. *Ambler Realty Co.*, 272 U.S. 365 (1926), in which the Supreme Court announced the constitutionality of dividing a municipality into districts for the purpose of imposing land use restrictions.

Boston; to preserve and enhance air quality by protecting the supply of vegetation and open space along the city's Greenbelt Roadways; to enhance and protect the natural scenic resources of the city; to protect the city's Greenbelt Roadways from traffic congestion and to abate serious and present safety concerns."

Article 29, § 29-1, of the code, as inserted June 1, 1987.

Overlay districts typically achieve their objectives without amending the underlying zoning by employing "a technique in which new, more restrictive zoning is 'laid over' an existing zone in order to further regulate or restrict certain permitted uses . . . . The typical overlay district is not an independent zoning district but simply a layer that supplements the underlying zoning district regulations." Salsich & Tryniecki, Land Use Regulation 167 (1998). The more restricted area is often shown by cross-hatching or like device on a transparent material that is laid over the paper zoning map, hence the name. As the result of the introduction of the overlay zone, parcels of land within an overlay zone are subjected "simultaneously . . . to two sets of zoning regulations: the underlying and the overlay zoning requirements." Nolon, Local Land Use Controls That Achieve Smart Growth, 31 Envtl. L. 11025 (2001).

Here, KCI's parcel is subject to zoning regulations governing GPODs (art. 29) that incorporate by reference conditional use procedures of the code (art. 6), site plan review procedures (art. 80), and regulations applicable to an "S-5" subdistrict (art. 8), which, in the absence of GPOD regulations, allow construction of single-family dwellings once certain dimensional and other requirements not here at issue have been met. We look to the entire GPOD regulatory scheme to determine whether apparently conflicting provisions may be harmonized or whether, as found by the judge, the provisions incorporating conditional use procedures must be invalidated. "Statutes are to be construed so as to harmonize superficially discordant provisions." *Lee* v. *Board of Appeals of Harwich*, 11 Mass. App. Ct. 148, 154 (1981). See *Doliner* v. *Planning Bd. of Millis*, 343 Mass. 1, 5 (1961). "The construction of a statute which leads to a determination that a piece of legislation is ineffective will not be adopted if the statutory language 'is fairly susceptible to a

construction that would lead to a logical and sensible result.' " *Adamowicz* v. *Ipswich*, 395 Mass. 757, 760 (1985).

Article 6 governs conditional uses, that is, those uses not allowed as of right, nor forbidden, by art. 8. In contrast with a use allowed as of right, "a [conditional use permit][8] concerns a use thought under the zoning code to be potentially acceptable in a zoning district, but only after and subject to review and permission of a permit granting authority, to the end that the use applied for be compatible with the allowed uses in the area in which it is to be planted." *Duteau* v. *Zoning Bd. of Appeals of Webster*, 47 Mass. App. Ct. 664, 667 (1999). See *SCIT, Inc.* v. *Planning Bd. of Braintree*, 19 Mass. App. Ct. at 109. Pursuant to art. 6, § 6-3, the board shall grant a permit for a conditional use "only if it finds that all of the following conditions are met." Among the several conditions, set forth in the margin,[9] only subparagraph (g) is pertinent to a GPOD, with the remaining conditions in subparagraphs (a) through (e) (that, for

---

[8]A conditional use permit under the Boston zoning code is synonymous with a special permit under G. L. c. 40A. *National Amusements, Inc.* v. *Boston*, 29 Mass. App. Ct. 305, 308 (1990).

[9]Article 6, § 6-3, of the code, as amended through May 9, 1996, provides, in its entirety, as follows:

"The [b]oard of [a]ppeal shall grant any such appeal [i.e., an application for a conditional use permit] only if it finds that all of the following conditions are met:

"(a) the specific site is an appropriate location for such use or, in the case of a substitute nonconforming use under Section 9-2, such substitute nonconforming use will not be more objectionable nor more detrimental to the neighborhood than the nonconforming use for which it is being substituted;

"(b) the use will not adversely affect the neighborhood;

"(c) there will be no serious hazard to vehicles or pedestrians from the use;

"(d) no nuisance will be created by the use;

"(e) adequate and appropriate facilities will be provided for the proper operation of the use;

"(f) if such appeal relates to a Development Impact Project as defined in Section 80B-7, the applicant shall have complied with the Development Impact Exaction requirements set forth in section 80B-7.3; and

example, the use be not more objectionable or detrimental to, or adversely effect, the neighborhood) having been addressed when the municipality voted to establish which uses would be allowed as of right in the base district. See *Duteau* v. *Zoning Bd. of Appeals of Webster*, 47 Mass. App. Ct. at 667 ("By enacting a by-law that allows a use as matter of right, the inhabitants of a town have previously resolved, in a legislative sense, considerations of comfort, health, safety, and traffic"). Subparagraph (g) provides that if an appeal to the board seeking a conditional use permit "relates to a Proposed Project in an area designated a Greenbelt Protection Overlay District as defined in Section 29-2, the Applicant shall have complied with the requirements set forth in Section 29-3 and section 29-5 and the standards set forth in Section 29-6."

Article 29 of the code sets forth the procedures pursuant to which an area may be designated a GPOD and describes areas that have been so designated, defines the building projects to which the GPOD regulations apply, and sets forth "general" as well as "specific requirements" and "standards" applicable to proposed projects. We focus on those provisions containing prerequisites to construction that may be seen to conflict with the provisions in art. 8, regulating uses and allowing as a matter of right the construction of single-family homes in the subdistrict in which KCI seeks to build its homes.

Among the general requirements in § 29-3 is the requirement that "an applicant for a building permit . . . shall obtain a conditional use permit pursuant to the procedures set forth in Article 6." Section 29-5 has the single requirement that the

---

"(g) if such appeal relates to a Proposed Project in an area designated a Greenbelt Protection Overlay District as defined in Section 29-2, the Applicant shall have complied with the requirements set forth in Section 29-3 and Section 29-5 and the standards set forth in Section 29-6."

We note that the absence of the conjunctive "and" following subparagraph (e) (deleted by the May 9, 1996, amendment to this section) lends support to our view that the sole prerequisite to obtaining a conditional use permit under Article 6 is compliance with "the requirements set forth in Section 29-3 and Section 29-5 and the standards set forth in Section 29-6," pursuant to subparagraph (g).

proposed project be submitted for site plan review in accordance with art. 80.[10] Section 29-6, also referencing art. 6, provides:

> "To obtain a conditional use permit the Applicant shall show that the Proposed Project complies with the following standards in addition to the standards set forth in Article 6: (a) provision for adequate vehicular access, off-street parking and loading shall not have a significant adverse effect on traffic and parking on the Greenbelt Roadway and adjacent streets; (b) provision for landscaping treatment that ensures that the natural and aesthetic quality of the Greenbelt Roadway area will be maintained; (c) provision for the design of all structures that is compatible with surrounding neighborhood."

We are, thus, faced with a set of zoning regulations governing the proposed project that (1) allow the use as of right, (2) require that a conditional use permit be obtained, and (3) regulate the use through site plan review.

We are aided in our endeavor to harmonize these potentially conflicting regulations by art. 3, § 3-1A, of the code, which addresses the issue of competing regulations by providing that when "[a] subdistrict or part thereof or a contiguous group of subdistricts or parts thereof" has been designated a special purpose overlay district, "[i]n an overlay district the regulations specified for the base subdistrict or subdistricts shall apply, insofar as they are not in conflict with special regulations specified for a particular overlay district." Based on this provision, and the requirement within art. 29 making the design and development procedures of art. 80 site plan review applicable to the GPOD permit process, we perceive no general intent on the part of the municipality to convert uses allowed as of right in

---

[10]"The Applicant shall submit to the Boston Redevelopment Authority evidence of having submitted its plans to the city of Boston Parks Commission at least sixty (60) days prior to the meeting held by the Boston Redevelopment Authority on the Applicant's request for a conditional use permit or a report by the Parks Commission indicating whether it recommends project approval, denial, or modification. Design submissions to the Boston Redevelopment Authority shall be required in accordance with the development and design review procedures of the Authority, as they may be revised from time to time. See Article 80 concerning Large Project Review and Small Project Review requirements for proposed Projects in Greenbelt Protection Overlay Districts." Article 29, § 29-5, as amended on May 9, 1996.

the underlying subdistricts into conditional uses. Rather, the regulatory scheme, unlike the scheme in *SCIT, Inc.* v. *Planning Bd. of Braintree,* 19 Mass. App. Ct. at 105 n.12, contemplates regulation of certain projects within a GPOD by site plan review.

We conclude that the GPOD regulations prescribe valid general rules for application to developments within a GPOD in accordance with the standards stated in art. 29, as well as applicable sections of art. 80, and provide a procedural mechanism that includes obtaining approval from the board in the form of a conditional use permit, as provided by art. 6. The regulatory regime subjects uses allowed as of right in the underlying subdistrict to conditions which, through site plan review, regulate the use but do not prohibit it. Compare *Y.D. Dugout, Inc.* v. *Board of Appeals of Canton,* 357 Mass. 25, 31 (1970) ("towns may adopt reasonably flexible methods, consistent with the substantive and procedural provisions of c. 40A, § 4. . . , of allowing boards of appeals to adjust zoning regulation to the public interest in accordance with sufficiently stated standards. We look at the substance as well as the form of the attempted regulation"). Article 29 "warrants no more than the imposition of reasonable conditions in connection with the approval of a site plan." *Ibid.* See *Auburn* v. *Planning Bd. of Dover,* 12 Mass. App. Ct. 998 (1981) (upholding provisions of zoning by-law requiring site plan approval through issuance of special permit "for all buildings to be erected in a business district," because site plan review was based on specifically enumerated criteria and therefore "the requirement that a site plan be approved before the issuance of a special permit does not impose impermissible restrictions on the allowed use"). See also *Quincy* v. *Planning Bd. of Tewksbury,* 39 Mass. App. Ct. 17, 21-22 (1995) (where procedural framework designated the planning board as a special permit granting authority, "[a]pproval of a site plan special permit application under these circumstances would still lead to the issuance of a special permit by the planning board as the designated special permit granting authority under [the by-law]").

*The board's decision.* In its appeal to the board, KCI alleged

that all applicable conditions had been met that would entitle it to a building permit and a conditional use permit.[11] The board's written decision denying KCI's appeal provides no indication as to why KCI's application is deficient, and gives no direction as to the manner in which compliance with the various standards can be achieved.[12]

The board's decision is inadequate because it fails to reflect that the appropriate standards were considered in making its decision. See *Quincy* v. *Planning Bd. of Tewksbury*, 39 Mass. App. Ct. at 21-22 ("where the proposed use is one permitted by right the planning board may only apply substantive criteria consistent with *Prudential Ins. Co. of America* v. *Board of Appeals of Westwood*, 23 Mass. App. Ct. 278 [1986] [i.e., it may impose reasonable terms and conditions on the proposed use, but it does not have discretionary power to deny the use]").

The judgment declaring invalid art. 29, § 29-6, is reversed. A new judgment shall be entered declaring that the GPOD regulatory scheme is valid but annulling the action of the board for the reason that the board exceeded its authority in disapproving KCI's plan without setting forth reasonable terms and conditions on the proposed use, and remanding the matter to the

---

[11]KCI asserts that the dimensional requirements applicable to the single-family residential district have been met. It also asserts that all of the remaining requirements and conditions to which the project is subject have been met by virtue of the fact that the project is less dense than the housing composition in the surrounding area; that the designs are compatible with the neighborhood; that the project is insulated from abutters by steep grades and perimeter vegetation; that city agencies have reviewed and approved the proposed roadways and drainage system; that the project is not visible from a greenbelt roadway; and that no clearing of vegetation within twenty-five feet is required.

KCI's permit applications were not included in the record on appeal. During oral argument, KCI indicated that it had participated in the Article 80 site plan review process.

[12]The written denial states only that the board was "of the opinion that [KCI] did not advance sufficient reasons to satisfy the Board that all the conditions under which the Board may grant a[] Conditional Use under Article 6, Section 6-3, and under Article 29, Section 29-6 of the Zoning Code have been met, nor to cause the Board to come to a conclusion that this is a specific case where relief requested may be granted without substantial detriment to the public good and without substantially derogating from the intent and purpose of the Zoning Act."

board for reconsideration in the light of this opinion.[13] See *Y.D. Dugout, Inc.* v. *Board of Appeals of Canton*, 357 Mass. at 32; *Canter* v. *Planning Bd. of Westborough*, 4 Mass. App. Ct. 306, 310 (1976).

*So ordered.*

---

[13]The judgment may also set forth such procedural requirements as, for example, notice and the time frame within which the proceedings must be conducted.

The board's reconsideration may well be limited to the determination that KCI has complied with the conditions of art. 6, § 6-3(g), and has fulfilled all conditions that may have been imposed on it through the site plan review procedure, and in this event a conditional use permit shall issue. If the board finds that KCI has failed to meet the conditions of art. 6, § 6-3(g), the board shall state in what specific respects KCI's application is deficient and in what manner compliance with these standards is to be achieved.