APPLEGATE vs. TOWN OF NATICK PLANNING BOARD, MISC 20-000050

































 
 RYAN APPLEGATE, KATE APPLEGATE, LUCIA FRENKEL and LAWRENCE DICK, Plaintiffs, v. TOWN OF NATICK PLANNING BOARD; GLEN GLATER, PETER NOTTONSON, TERRI EVANS, ANDREW MEYER and JULIAN MUNNICH, as members of the Town of Natick Planning Board; STEPHEN VANCE, and JENNY VANCE, f/k/a Huashu Zhang Vance, Defendants
 MISC 20-000050 
 MAY 27, 2021
MIDDLESEX, ss.
VHAY, J.
DECISION














 Plaintiffs Ryan Applegate, Kate Applegate, Lucia Frenkel, and Lawrence Dick challenge under G.L. c.40A, § 17, a decision of the defendant Town of Natick Planning Board (the "Board"). The Board granted defendants Stephen and Jenny Vance a special permit to operate an 800-square-foot dog-kennel business from their home in Natick, Massachusetts (the "Vance Property"). Plaintiffs claim that the Town of Natick Zoning Bylaw ("Bylaw") limits such businesses to 400 square feet. The parties have moved and cross-moved for summary judgment. Having heard those motions, the Court agrees with the Board and the Vances that the Bylaw allows the Board to grant special permits to "customary home occupation dog kennels" that use more than 400 square feet of a home. Judgment will thus enter for the Board and the Vances, and against Plaintiffs. 





 The material facts are undisputed. The Vance Property is in a residential single family (RSA) district under the Bylaw. Sections III-A.1 & III-A.2 of the Bylaw contain various use regulations and a use-regulation schedule. Together they describe the uses the Bylaw allows as of right in the RSA district, those uses requiring a special permit, and those uses that are prohibited in the district. Since 1968, the Bylaw has included what current Bylaw calls Use #19, that for a 





 Customary home occupation within the principal building conducted by a resident of the premises . . . provided that not more than one other person is regularly employed therein in connection with such use; that not more than twenty-five per cent of the total floor area not to exceed four hundred square feet is regularly devoted to such use; that there is no exterior storage of materials or equipment; and that no display of products is visible from the street. 





(Emphasis added.) Since 1987, art. 1, § 200 of the Bylaw has defined the terms "Home Occupation/Customary Home Occupation" as 





 An occupation such as professional offices, studios, laboratories, and workshops which may specifically include the following occupations (not by way of limitation): seamstress, tailor, milliner, hair care facility, realtor, legal services, dental or medical care facility, art, craft or music instruction, provided that: (a) Only one person other than members of the family residing on the premises shall be simultaneously engaged in such occupation[;] (b) The use of the dwelling unit for the home occupation shall be clearly incidental and subordinate to its use for residential purposes by its occupants, and not more than 25% of the building area of the dwelling unit shall be used in the conduct of the home occupation; (c) There shall be no change in the outside appearance of the building or premises, or other visible evidence of the conduct of such home occupation other than one (1) sign, not exceeding two (2) square feet in area, non-illuminated, and mounted flat against the wall of the principal building; (d) No home occupation shall be conducted in any accessory building; (e) There shall be no sales other than goods produced or assembled on the premises in connection with such home occupation nor public display of goods or wares; (f) No traffic shall be generated by such home occupation in greater volumes than would normally be expected in a residential neighborhood, and any need for parking generated by the conduct of such home occupation beyond such normal volume shall be met off the street and other than in a required front yard; [(g)] No equipment or process shall be used in such home occupation which creates noise, vibration, glare, fumes, smoke, dust, odors, heat, unsightliness, or electrical interference detectable to the family residence. In the case of electrical interference, no equipment or process shall be used which creates visual or audible interference in any radio or television receivers off the premises, or causes fluctuations in line voltage off the premises; (h) There is no exterior storage of materials or equipment including automotive parts and construction equipment; and (i) There is no external structural alterations which is not customary in a residential building. 





(Brackets and emphasis added.) In all RS districts, uses qualifying under Use #19 are allowed as of right. See Bylaw, § III-A.2. 





 In the spring of 2019, Natick's Town Meeting amended the Bylaw. The amended Bylaw contained several new use categories, including Use #53B, "Home Occupation/Customary Home Occupation Dog Kennel." Unlike Use #19, which starts with a description of a use ("customary home occupation") but then qualifies which of those uses falls with Use #19 (including a 400- square-foot upper limit on the use), Use #53B is described simply as "Home Occupation/Customary Home Occupation Dog Kennel." Section 200 of the Bylaw, as amended, defines that term as 





 A "Home Occupation/Customary Home Occupation," compliant with that term and meaning as defined in Town of Natick - Zoning Bylaw Section I/Article I, Section 200[] except allowing partial outdoor conduct by such home occupation as necessary for proper dog care, used for boarding, holding, day care, overnight stays or training of dogs that are not the property of the owner of the establishment, at which such services are rendered in exchange for consideration and in the absence of the owner of any such dogs, or engaged in the business of breeding dogs for sale or exchange to wholesalers, brokers or pet shops in return for consideration. 





Town Meeting further voted to allow Use #53B activities in all RS districts by special permit. See Bylaw, § III.A.2. In the RSA district, the Planning Board is the special-permit granting authority. See id. at § IV-DD.2.A.a.1.





 Following adoption of the 2019 amendments, the Vances applied to the Board for a special permit to run on their property Jenny's Pet Care, a dog-services business. The Vances' application stated they'd be using "approximately 800 square feet [of basement space] for [dog] boarding." The Vances' home has a total floor area of 4,180 square feet. The Board granted the permit after a public hearing. 





 Plaintiffs concede that, as described in the Vances' application, Jenny's Pet Care meets the definition of a Home Occupation/Customary Home Occupation Dog Kennel, including its requirement that the occupation comply with the Bylaw's more general definition of Home Occupation/Customary Home Occupation. Plaintiffs also admit that, by using only 800 square feet of the Vance home, Jenny's Pet Care complies with the requirement, found in the latter definition, that home occupations use "not more than 25% of the building area of the dwelling unit . . . in the conduct of the home occupation." But Plaintiffs argue that in addition to staying below the 25% limit, the Vances also had to meet the requirements of Use #19, which confines all home occupations (or so Plaintiffs contend) to 400 square feet. 





 A court must determine the meaning of a local zoning bylaw 





 "by the ordinary principles of statutory construction." We first look to the statutory language as the "principal source of insight into legislative intent." When the meaning of the language is plain and unambiguous, we enforce the statute according to its plain wording "unless a literal construction would yield an absurd or unworkable result." We "endeavor to interpret a statute to give effect 'to all its provisions, so that no part will be inoperative or superfluous.'" 





Shirley Wayside Ltd. P'ship v. Board of Appeals of Shirley, 461 Mass. 469 , 477 (2012) (citations omitted), quoting Framingham Clinic, Inc. v. Zoning Bd. of Appeals of Framingham, 382 Mass. 283 , 290 (1981); Adoption of Daisy, 460 Mass. 72 , 76 (2011); and Connors v. Annino, 460 Mass. 790 , 796 (2011).





 Of these interpretive tools, the first (ordinary principles of statutory construction) is determinative here. "If a general statute and a specific statute cannot be reconciled, the general statute must yield to the specific statute. This is particularly true where, as here, the specific statute was enacted after the general statute." Pereira v. New England LNG Co., 364 Mass. 109 , 118 (1973). Plaintiffs concede that the activities encompassed within 2019's Use #53B are a subset of what § 200 has defined since 1987 as home occupations. Consistent with Pereira, the Court infers from Town Meeting's adoption of provisions that are particular to a subset of home occupations (those involving dog kennels) that Town Meeting wished to treat that subset differently from home occupations generally, with only one qualification: for an activity to qualify under Use #53B, that activity also must meet the requirements found in § 200's definition of "home occupation/customary home occupation." Town Meeting's cross-reference in § 200's definition of "home occupation/customary home occupation dog kennel" to § 200's definition of "home occupation/customary home occupation" shows that Town Meeting knew how to cross reference the Bylaw's provisions. Town Meeting's chosen cross-reference further shows that if Town Meeting wanted #53B uses also to meet the requirements of Use #19, the 2019 amendments would have said that expressly. 





 The Court takes further comfort in its interpretation of Uses ##19 and 53B in knowing that it's the same as the Board's interpretation. "[A]lthough interpretation of the by-law is in the last analysis a judicial function, deference is owed to a local zoning board's home grown knowledge about the history and purpose of its town's zoning by-law." Duteau v. Zoning Bd. of Appeals of Webster, 47 Mass. App. Ct. 664 , 669 (1999); see also Deadrick v. Zoning Bd. of Appeals of Chatham, 85 Mass. App. Ct. 539 , 545 (2014). The Court thus holds that Planning Board properly granted the Vances a special permit for Jenny's Pet Care. 





 Judgment to enter accordingly. 






 
 Home/Search 
 Land Cases by Docket Number
 Land Cases by Date 
 Land Cases by Name
 


 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.