NEXTSUN ENERGY LLC vs. FERNANDES, MISC 19-000230

































 
 NEXTSUN ENERGY LLC and FAIRLAND FARM, LLC Plaintiffs, v. JOSEPH FERNANDES, STEPHEN J. JURCZYK, STEVEN HORNSBY, FRANK N. DURANT, JULIE OAKLEY, OREN SIGAL, and TIMOTHY GRIFFIN as they are MEMBERS OF THE TOWN OF NORTON PLANNING BOARD
 MISC 19-000230 
 FEBRUARY 22, 2021
BRISTOL, ss.
FOSTER, J.
CORRECTED MEMORANDUM AND ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT
With: 
MISC 19-000564 : THE TOWN OF NORTON, Defendants, JOSEPH D. COGLIANO, JR., Individually and as Trustee of the Joseph D. Cogliano Realty Trust and the Eleanor E. Cogliano Realty Trust, KELLY GALLAGHER and CHARLES GALLAGHER, MARIANNE JOHNSON and JOEL P. JOHNSON, Plaintiffs, v. STEVEN HORNSBY, TIMOTHY GRIFFIN, JULIE OAKLEY, JOSEPH FERNANDES, KEVIN O'NEIL, SCOTT BICHAN, OREN SIGAL, as they are MEMBERS OF THE TOWN OF NORTON PLANNING BOARD; THE TOWN OF NORTON 
MISC 19-000322 : NEXTSUN ENERGY LLC, STEM, LLC, PINEAU PROJECTS, LLC, and THE WESTLAND GROUP LLC, Defendants, JOSEPH D. COGLIANO, JR., Individually and as Trustee of the Joseph D. Cogliano Realty Trust and the Eleanor E. Cogliano Realty Trust, RYAN P. SHERMAN and JESSICA E. SHERMAN, and MARIANNE JOHNSON and JOEL P. JOHNSON, Plaintiffs, v. THE TOWN OF NORTON, THE TOWN OF NORTON PLANNING BOARD; THE TOWN OF NORTON BOARD OF SELECTMEN; NEXTSUN ENERGY LLC, FAIRLAND FARM, LLC, and POLILLIO SAND AND GRAVEL CORP., Defendants 















 Introduction 





 These three actions arise out of the application of NextSun Energy LLC (NextSun) and Fairland Farm, LLC (Fairland Farm) for site plan review and special permit to construct on Fairland Farm's property, a cranberry bog, a large-scale, ground-mounted solar photovoltaic installation. After remand, the Town of Norton Planning Board (Board) approved the site plan with conditions and denied the special permit. NextSun and Fairland Farm appealed. Also appealing are individual residents around the project site; they have also brought a separate action challenging the rezoning that permitted NextSun's plans as an as of right use. These cross motions for summary judgment seek determination of several issues. After hearing and consideration, the court finds that the rezoning was properly noticed and does not constitute spot zoning, that the Board properly endorsed the approval-not-required plans put before it by Fairland Farm, that Board member Kevin O'Neil properly voted on the remand applications, and that the Board improperly denied the special permit application. The Board's decision must be annulled, and case no. 19 MISC 000322 dismissed. 





Procedural History 





 The Complaint in case no. 19 MISC 000230 was filed on May 10, 2019. The Answer of the Town of Norton and the members of the Board (together, the Town) was filed on May 30, 2019. The Assented-to Motion to Amend Complaint was allowed and the Amended Complaint deemed filed on June 27, 2019. On July 1, 2019, the court issued the Order of Remand, remanding this action to the Board, staying this action, and retaining jurisdiction. 





 The Verified Complaint under M.G.L. c. 240, § 14A, M.G.L. c. 231, § 1, and M.G.L. c. 41, § 81BB in case no. 19 MISC 000322 (322 Complaint) was filed on June 28, 2019. The 322 Complaint has three counts: Count I under G.L. c. 240, § 14A; Count II under G.L. c. 231, § 1; and Count III, under G.L. c. 41, § 81BB. The Answer of the Town of Norton Planning Board was filed on July 29, 2019; NextSun Energy LLC's Answer and Affirmative Defenses to the Verified Complaint was filed on August 1, 2019; and the Answer and Affirmative Defenses of Fairland Farm, LLC was filed on August 8, 2019. NextSun Energy LLC's Assented-to Motion to Consolidate (Motion to Consolidate) was filed on August 16, 2019. Plaintiff's Voluntary Dismissal of Claims Against Defendant Polillio Sand and Gravel Corp., Pursuant to Mass.R.Civ.P. 41(a)(1)(i) was filed on August 22, 2019. 





 In case no. 19 MISC 000230, the Complaint After Remand Under c. 240, § 14A and G.L. c. 40A, § 17 (230 Complaint) was filed on November 19, 2019. The 230 Complaint has two counts: Count I is a claim under G.L. c. 240, § 14A, and Count II is an appeal under G.L. c. 40A, § 17 of the decision of the Board filed with the Norton Town Clerk on October 31, 2019. Also on November 19, 2019, the Verified Complaint in case no. 19 MISC 000564 (the 564 Complaint) was filed, appealing the same decision under G.L. c. 40A, § 17. NextSun Energy LLC's Answer and Affirmative Defenses to the Verified Complaint in case no. 19 MISC 000564 was filed on December 20, 2019. The Answer of the Town was filed in case no. 19 MISC 000230 on December 13, 2019. 





 The case management in all three cases was held on January 6, 2020. The claims of Jessica E. Sherman and Ryan P. Sherman in all cases were dismissed without prejudice, leaving as plaintiffs in the 322 Complaint and the 564 Complaint Joseph D. Cogliano, Jr., individually and as trustee of the Joseph D. Cogliano Realty Trust and the Eleanor E. Cogliano Realty Trust, Kelly Gallagher and Charles Gallagher, and Marianne Johnson and Joel P. Johnson (the Individual Residents). The Motion to Consolidate was denied without prejudice, and the cases were deemed treated as companion cases. 





 On May 29, 2020, the following were filed in these companion cases: Municipal Defendants' Motion for Summary Judgment against Joseph D. Cogliano, Jr., Individually and as Trustee of the Joseph D. Cogliano Realty Trust and the Eleanor E. Cogliano Realty Trust, Kelly Gallagher and Charles Gallagher, and Marianne Johnson and Joel P. Johnson (Town Summary Judgment Motion), Municipal Defendants' Memorandum in Support of its Motion for Summary Judgment against Joseph D. Cogliano, Jr., Individually and as Trustee of the Joseph D. Cogliano Realty Trust and the Eleanor E. Cogliano Realty Trust, Kelly Gallagher and Charles Gallagher, and Marianne Johnson and Joel P. Johnson, Municipal Defendants' Statement of Undisputed Material Facts, NextSun Energy LLC's and Fairland Farm, LLC's Motion for Summary Judgment (NextSun Summary Judgment Motion), NextSun Energy LLC's and Fairland Farm, LLC's Summary Judgment Brief, Combined Statement of Undisputed Material Facts, and Joint Summary Judgment Appendix.





 On June 9 and 11, 2020, the Individual Residents' Motion and Corrected Motion for Further Responses to Requests for Admission and to Extend Deadlines and to Allow Further Discovery (Rule 56(f) Motion) were filed. NextSun Energy LLC, Fairland Farm's, and Municipal Defendants' Opposition to Plaintiffs Individual Resident's Motion were filed on June 15, 2020. At a hearing on June 17, 2020, the Rule 56(f) Motion was allowed in part and denied in part. The court found that it would draw an inference, for purposes of Town and NextSun Summary Judgment Motions, against the moving parties that at the time of the Norton Zoning Bylaw Amendment at issue through the date of the hearing, there were no other active cranberry bogs in the Town of Norton except for that owned by Fairland Farm (inference), that for the definition of "active", the inference would be drawn such that the definition(s) that is most favorable to the private parties controls, and that the argument of whether a cranberry bog can become active in the future is not foreclosed. 





 On June 30, 2020, the following were filed: NextSun Energy LLC and Fairland Farm, LLC's Statement Concerning the Municipal Defendants' Statement of Undisputed Material Facts in Support of Their Motion for Summary Judgment, Municipal Defendants' Partial Opposition to NextSun Energy LLC's Motion for Summary Judgment and Cross Motion for Summary Judgment (Town Summary Judgment Cross Motion), and the Combined Statement of Material Facts. 





 On July 1, 2020, the following were filed: Plaintiff's Opposition to Municipal Defendants Motion for Summary Judgment against Joseph D. Cogliano, Jr., Individually and as Trustee of the Joseph D. Cogliano Realty Trust and the Eleanor E. Cogliano Realty Trust, Kelly Gallagher and Charles Gallagher, and Marianne Johnson and Joel P. Johnson; Plaintiff's Opposition to NextSun Energy LLC's and Fairland Farm, LLC's Motion for Summary Judgment; Plaintiffs' Responses to Municipal Defendants' Statement of Undisputed Material Facts; Plaintiffs' Responses to NextSun Energy LLC's and Fairland Farm, LLC's Combined Statement of Undisputed Material Facts, and the Joint Summary Judgment Appendix. 





 On July 13, 2020, the following were filed: Reply Brief of NextSun Energy LLC and Fairland Farm, LLC; Municipal Defendants' Reply to Plaintiffs' Opposition to Municipal Defendants Motion for Summary Judgment against Joseph D. Cogliano, Jr., Individually and as Trustee of the Joseph D. Cogliano Realty Trust and the Eleanor E. Cogliano Realty Trust, Kelly Gallagher and Charles Gallagher, and Marianne Johnson and Joel P. Johnson; Combined Statement of Undisputed Material Facts (NextSun Energy LLC and Fairland Farm, LLC's Statement of Undisputed Material Facts with Responses by the Municipal Defendants and Plaintiffs); and the Joint Summary Judgment Appendix (Appendix or J.A.). On July 17, 2020, the corrected Combined Statement of Undisputed Material Facts (NextSun Energy LLC and Fairland Farm, LLC's Statement of Undisputed Material Facts with Responses by the Municipal Defendants and Plaintiffs) (Facts) was filed. 





 The Town Summary Judgment Motion, the NextSun Summary Judgment Motion, and the Town Summary Judgment Cross Motion were heard on July 17, 2020, and were taken under advisement. This Memorandum and Order follows. 





Summary Judgment Standard 





 Summary judgment may be entered if the "pleadings, depositions, answers to interrogatories, and responses to requests for admission . . . together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Mass. R. Civ. P. 56(c). In viewing the factual record presented as part of the motion, the court is to draw "all logically permissible inferences" from the facts in favor of the non-moving party. Willitts v. Roman Catholic Archbishop of Boston, 411 Mass. 202 , 203 (1991). "Summary judgment is appropriate when, 'viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law.'" Regis College v. Weston, 462 Mass. 280 , 284 (2012), quoting Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117 , 120 (1991). Where the non moving party bears the burden of proof, the "burden on the moving party may be discharged by showing that there is an absence of evidence to support the non-moving party's case." Kourouvacilis v. General Motors Corp., 410 Mass. 706 , 711 (1991), citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see Regis College, 462 Mass. at 291292. 





Facts 

 For the purposes of deciding on this motion for summary judgment, the following facts are undisputed or inferred in the non-moving party's favor: 





 1. Fairland Farm owns approximately 265 acres of land off Bay Road in the towns of Norton and Easton, Bristol County, Massachusetts. J.A. Exh. 1 at ¶ 2; Facts ¶ 1. 





 2. Historically, a portion of the land has been used for the cultivation of cranberries. J.A. Exh. 1 at ¶¶ 3  5; Facts ¶ 2. 





 3. For the purposes of these motions, the court infers that the cranberry bogs on Fairland Farm's property were the only active cranberry bogs in the Town at the time of the events at issue. (Inference). 





 4. Fairland Farm intends to execute a long-term lease with NextSun, a limited liability company based in Colorado that specializes in the development, financing, construction, and operation of commercial and utility scale solar photovoltaic projects. J.A. Exh. 1 at ¶ 10; Exh. 4 at ¶ 1; Facts ¶ 4. 





 5. NextSun currently plans to use 23.3 acres of Fairland Farm's property (the project site) for a large-scale, ground-mounted solar photovoltaic installation. J.A. Exh. 4 at ¶ 13.i; Facts ¶ 5). NextSun and Fairland Farm intend that the cranberry bogs on the project site will remain operational during construction and operation of the project, though plaintiffs dispute whether the cranberry bogs will, in fact, remain operational. J.A. Exh. 1 at ¶ 12; Exh. 4 at ¶¶ 8, 13; Exhs. 6365; Facts ¶ 5. 





 6. By letter dated December 27, 2018, Beals + Thomas, Inc. filed with the Board on behalf of NextSun an Application for Site Plan Review and Special Permits (the original application) to construct large-scale, ground-mounted solar installation on the project site (the original project). J.A. Exh. 3, Tab B; Facts ¶ 8. 





 7. The Town of Norton Zoning Bylaw (bylaw) is codified as Chapter 175 of the Town of Norton General Code. J.A. Exh. 5; Facts ¶ 6. 





 8. At the time of the original application, Article XXII of the bylaw set forth zoning requirements applicable to Large-Scale, Ground-Mounted Solar Photovoltaic Installations. The purpose of Article XXII is: 





 to provide for the creation of large-scale, ground-mounted solar photovoltaic facilities or installations by establishing standards for the placement, design, construction, operation, monitoring, modification and removal of such installations that address public safety, minimize impacts on scenic, natural and historic resources and that provide adequate financial assurance for the eventual decommissioning of such installations. 





 Facts ¶ 7; J.A. Exh. 5. 





 9. At the time of the original application, bylaw § 175-22.2(D) provided that "[l]arge-scale, ground-mounted solar photovoltaic installations shall be subject to site plan approval by the Norton Planning Board as provided for in the Norton Zoning Bylaw, Article XV, Site Plan Approval, and this article." J.A. Exh. 5; Facts ¶ 10. 





 10. The project site is in a Residential 80 zoning district under the bylaw. J.A. Exh. 3, Tab A. At the time of the original application, bylaw § 175-22.2(E) provided that "[l]arge-scale, ground-mounted solar photovoltaic installations located within the Residential 80 or Residential 60 Zoning District shall be allowed only upon grant of a special permit from the Norton Planning Board." J.A. Exh. 5; Facts ¶¶ 9, 11. 





 11. The project site is also in the floodplain overlay district. The floodplain overlay district is created by Article XIII of the bylaw. It includes all special flood hazard areas within the Town designated as Zone A or AE on the Bristol County Flood Insurance Rate Map (FIRM) issued by the Federal Emergency Management Agency (FEMA) for the administration of the National Flood Insurance Program. Facts ¶¶ 69, 70. 





 12. Certain buildings, structures or uses within the floodplain overlay district that are allowed in the underlying district are required to obtain a special permit. A floodplain special permit is issued subject to the following limitations: 





 (1) No permit shall be issued to fill or excavate in the floodway or to build a new structure or to substantially improve an existing structure in the floodway; 





 (2) in Zones A and AE, the proposed use, including filling or excavating, when combined with all existing uses, shall not increase the water surface elevation of the one-hundred year flood more than zero inch at any point. This is to be so certified to the Planning Board by a registered professional engineer upon application for the special permit. 





 J.A. Exh. 5, §§ 175-13.4.A, C; Facts ¶¶ 71, 72. 





 13. Section 175-10.10 of the bylaw, Standards for issuing variances and special permits, states: 





 Variances and special permits are not granted as a matter of right but are privileges which may be granted as appropriate in specific circumstances which are in keeping with the intent of the Zoning Bylaw and subject to general or specific rules contained herein. As a condition of granting a permit or special permit, the granting authority shall find that the petitioned-for exception is socially and economically desirable, and that it would satisfy an existing need, that the advantages of the proposal outweigh by far any detrimental effects, and that such effects on the neighborhood and environment shall not be significantly greater than could be expected from development if the permit or special permit were denied, that the applicant has no reasonable alternative available to accomplish his purpose, and that specific conditions to minimize detrimental effects and protect the neighborhood have been imposed and, if necessary, secured by bond or otherwise. In addition, the specific conditions of the applicable section of the bylaw must be met. 





 J.A. Exh. 5, § 175-10.10; Facts ¶ 73. 





 14. The original application requested site plan approval and two special permits: (i) a special permit for a large-scale, ground-mounted photovoltaic installation under Section 175- 22.2(E) of the bylaw; and (ii) a special permit for a project within the floodplain overlay district. J.A. Exh. 3, Tab B; Facts ¶ 12. 





 15. In late 2018, prior to the submission of NextSun's original application, a series of amendments were proposed to Article XXII of the bylaw (the solar bylaw amendments). J.A. Exhs. 711; Facts ¶ 13. 





 16. At the time, the Town of Norton expressed an interest in participating in the Green Community Designation and Grant Program, a program administered by the Department of Energy Resources under the Green Communities Act, Chapter 169 of the Acts of 2008. J.A. Exhs. 7, 8; J.A. Exh. 12; Facts ¶ 16. 





 17. The solar bylaw amendments proposed to amend Article XXII of the bylaw as follows. First, they added a definition of "As-of-right siting" to bylaw § 175-22.1, defining that term as: 





 Development may proceed as an allowed use without the need for a special permit, amendment, waiver or other discretionary approval. As-of-right development for large-sale, ground-mounted solar photovoltaic system is subject to site plan review to determine conformance with the Norton Zoning Bylaw. 





 J.A. Exh. 12; Facts ¶ 24. 





 18. Zoning Bylaw Section 175-22.2(D) provided that:





 Large-scale, ground-mounted solar photovoltaic installations shall be subject to site plan approval by the Norton Planning Board as provided for in the Norton Zoning Bylaw, Article XV, Site Plan Approval, and this article. 





The solar bylaw amendments proposed to add a new sentence to the end of Section 175-22.2(D): "As-of right siting development may proceed as an allowed use without the need for a special permit, amendment, waiver or other discretionary approval." J.A. Exhs. 5, 11; Facts ¶¶ 25, 26. 





 19. The solar bylaw amendments proposed to delete bylaw § 175-22.2(E), which had required a special permit for a large-scale, ground-mounted solar photovoltaic installation located within the Residential 80 or Residential 60 zoning districts. It replaced that subsection with language pertaining to smaller-scaled ground-or-building-mounted solar installations, which are accessory to structures. J.A. Exhs. 5, 11; Facts ¶ 27. 





 20. The solar bylaw amendments also proposed to add language to bylaw § 175-22.3, which otherwise provided for large-scale, ground-mounted solar photovoltaic installations within bordering vegetated wetlands, bordering land subject to flooding, and riverfront areas, as those areas are defined in the Massachusetts Wetland Protections Act Regulations. The proposed new language provided: 





 Notwithstanding the foregoing, installations which qualify as an Agricultural Solar Tariff Generation Unit (ASTGU) under the Massachusetts Department of Energy Resources Solar Massachusetts Renewable Target (SMART) program pursuant to 225 CMR 20.00 (Regulatory Provisions Specific to ASTGUs), located on cranberry bogs that are active at the time of the submittal of the application may be allowed within areas subject to the Massachusetts Wetlands Protections Act or any other Town Wetland Bylaw. Nothing herein shall supersede or eliminate applicable requirements of the Massachusetts Wetlands Protections Act and any other Town Wetland Bylaw with respect to such installations. 





 J.A. Exhs. 5, 11; Facts ¶ 28. 





 21. On November 15, 2018, the Town of Norton Board of Selectmen voted to call for a Special Town Meeting on January 14, 2019, to open the warrant to approve the solar bylaw amendments. J.A. Exh. 7; Facts ¶ 14. 





 22. The Board set a public hearing on the solar bylaw amendments for December 18, 2018. J.A. Exh. 9. Section 175-12.2.B of the bylaw requires that "[n]otices of such hearing shall be mailed to all property owners . . . included within or abutting land subject to amendment, abutting communities, and the Regional Planning Agency. General notice will serve where the proposed amendment is of universal or wide application in the Town." J.A. Exh. 5. 





 23. No notice of the public hearing was mailed to property owners. Beginning on December 4, 2018, notice of the December 18, 2018, Board hearing was published for two consecutive weeks in the Sun Chronicle, a newspaper published in North Attleboro, Massachusetts, and distributed to towns in Southeastern, Massachusetts, including the Town of Norton. Notice of the December 18, 2018, Board hearing was also posted at the Town Clerk's office. J.A. Exh. 2 at No. 11, Exh. 9; Facts ¶¶ 18, 19. 





 24. The notice stated that the public hearing would take place on "Wednesday December 18, 2018" when in fact December 18, 2018, was a Tuesday. J.A. Exh. 9 (emphasis supplied). 





 25. On December 18, 2018, the Board held the public hearing at which it considered the solar bylaw amendments. The Board chair at the time, Joseph Fernandes, recused himself from the hearing. Though present at the outset of the Board meeting, then-Board member Frank N. Durant had excused himself and was absent when the public hearing began. At the conclusion of the public hearing, the then-participating members of the Board (including Steven Hornsby, Timothy Griffin, Julie Oakley, and Oren Sigal) voted unanimously (5-0) to recommend to the Board of Selectmen and the Special Town Meeting that the solar bylaw amendments be adopted. J.A. Exh. 10; Facts ¶ 20. 





 26. On January 14, 2019, Norton held a duly noticed Special Town Meeting to consider five warrant articles. The solar bylaw amendments were considered as Warrant Article 5. J.A. Exhs. 11, 12; Facts ¶ 21. 





 27. Town Moderator William A. Gouveia determined that the Special Town Meeting passed Warrant Article 5 by the 2/3 vote required to amend a zoning by law. J.A. Exh. 12; Facts ¶ 23. 





 28. The Board held public hearings on the original application on January 22, 2019, February 5, 2019, February 28, 2019, March 12, 2019, March 26, 2019, and April 2, 2019. The Board decided that the solar bylaw amendments applied to the original application and, therefore, NextSun did not require a special permit. At the March 26, 2019, public hearing, the Board allowed NextSun to withdraw its application for a special permit under bylaw § 175- 22.2.E as moot. J.A. Exh. 17; Facts ¶¶ 40, 41, 43, 44. 





 29. At the April 2, 2019, meeting, the Board voted to close the public hearing on the original application. The Board then voted to deny NextSun's request for site plan approval and its request for a floodplain overlay district special permit (original decision). J.A. Exh. 17; Facts ¶¶ 45, 46. 





 30. Shortly after the solar bylaw amendments were approved at the Special Town Meeting as Warrant Article 5, several Norton residents organized and obtained signatures for a petition to compel the Town to hold a Special Town Meeting to consider revoking the solar bylaw amendments. J.A. Exh. 13; Facts ¶ 30.





 31. By letter dated April 16, 2019, from Nicole B. Caprioli, Assistant Attorney General in the Municipal Law Unit of the Office of the Attorney General of the Commonwealth of Massachusetts, approved Warrant Article 5. J.A. Exh. 3, Tab C; Facts ¶ 29. 





 32. Also on April 16, 2019, NextSun filed with the Board two plans for which it sought endorsement as approval not required under the Subdivision Control Law: (a) a plan for 210 Bay Road, Norton, Assessor's Map 6, Lot 11-0 prepared by Beals + Thomas, Inc. (the Fairland Farm ANR), and (b) a plan for 0 Bay Road, Norton, Assessor's Map 6, Lot 64-0 prepared by Beals + Thomas, Inc. (the Polillio ANR) (together, the ANR plans). The area shown as Lot 1 on the Fairland Farm ANR encompasses the cranberry bogs and associated upland areas that make up the project site. That same day, NextSun delivered with the Norton Town Clerk notice of the filing of the ANR plans J.A. Exh. 3, Tabs A, B, D(i) and (ii), E(i) and (ii); Facts ¶¶ 35, 37, 38. 





 33. On April 17, 2019, Norton held a Special Town Meeting, the warrant for which included a single article. That article was a line-by-line deletion of the changes to bylaw Article XXII enacted by the solar bylaw amendments. The Special Town Meeting adopted the warrant article. J.A. Exhs. 15, 62; Facts ¶¶ 33, 34. 





 34. On April 30, 2019, the Board endorsed the ANR plans as not requiring approval under the Subdivision Control Law. J.A. Exh. 3, Tab F(i) and (ii); Facts ¶ 39. 





 35. On May 10, 2019, NextSun filed case no. 19 MISC 000230, appealing the original decision under G.L. c. 40A, § 17. J.A. Exh. 6; Facts ¶ 47. 





 36. After proceedings before the Norton Conservation Commission, NextSun revised its original project to a project on the 23.3-acre project site with a reduced scope and footprint (amended project). J.A. Exhs. 4; Facts ¶¶ 48, 49.





 37. Given the revisions, NextSun and the Board jointly moved to remand the matter to the Board for consideration of the amended project. The court issued its Order of Remand on July 1, 2019. J.A. Exhs. 18, 19; Facts ¶¶ 54, 55. 





 38. On July 3, 2019, NextSun filed its amended application for site plan approval and a floodplain overlay district special permit for the amended project (amended application). At the same time, NextSun submitted a letter from counsel arguing that NextSun only needed site plan approval and was not separately obligated to apply for a floodplain overlay district special permit. J.A. Exh. 3, Tabs A, G; Facts ¶¶ 57, 61. 





 39. At the time of the amended application, the members of the Board were Steven Hornsby, Timothy Griffin, Julie Oakley, Joe Fernandes, Oren Sigal, and Kevin O'Neil. Kevin O'Neil was not a member of the Board when it considered the original application. J.A. Exhs. 20, 21; Facts ¶ 60. 





 40. The Board held public hearings on the amended application on July 23, 2019, and August 6, 2019, and closed the public hearing on August 6, 2019. Kevin O'Neil missed the August 6, 2019, public hearing. On August 19, 2019, he completed a certification under G.L. c. 39, § 23D, certifying that on August 10, 2019 he reviewed both an official audio and video recording of the August 6, 2019, public hearing. J.A. Exhs. 20, 21, 74; Facts ¶¶ 62, 63, 75. 





 41. The Board deliberated on the amended application at its meetings on August 20, 2019, September 7, 2019, and October 1, 2019. At its October 1, 2019, the Board voted 5-1 to approve NextSun's application for site plan review, with 64 conditions. It voted 4-2 to approve NextSun's application for a floodplain overlay district special permit; as a special permit requires a supermajority vote of the Board, this constituted a denial of the application for floodplain overlay special permit. J.A. Exhs. 20, 21; Facts ¶¶ 63, 64, 65, 66.





 42. The Board issued two written decisions, both filed with the Town Clerk on October 31, 2019: a decision approving the amended project site plan with conditions (the site plan remand decision) and a decision denying the amended application for a floodplain overlay district special permit (the special permit remand decision). NextSun timely appealed both decisions. J.A. Exhs. 20, 21, 22; Facts ¶¶ 67, 68. 





Discussion 





 The parties' motions and cross motions for summary judgment address the following questions: (1) Was the Board's public hearing on the solar bylaw amendments properly noticed under G.L. c. 40A, § 5, and bylaw § 175-12.2.B? (2) Are the solar bylaw amendments spot zoning? (3) Were the ANR plans properly endorsed? (4) Were Board member Kevin O'Neil's participation in the public hearings on the amended application and his votes on the site plan remand decision and the special permit remand decision lawful? (5) Was NextSun obligated to obtain a floodplain special permit, and, if so, what was the scope of the special permit? (6) Are NextSun's plans to include battery storage in the project within the scope of the uses allowed under the bylaw and the solar bylaw amendments? The court will not reach question six, as there are facts in dispute as to the nature of the batteries to be used and the regulatory regime with respect to those batteries, as well as the need to develop the factual record further. Questions one through five are addressed in turn. 





 1. Notice of the public hearing. Adoption of the solar bylaw amendments was governed by the requirements of G.L. c. 40A, § 5, and bylaw § 175-12.2.B. Under § 5, the planning board of a town must hold a public hearing on a zoning bylaw amendment and make a recommendation to town meeting, after which a 2/3 vote of town meeting is required for adoption of the amendment. G.L. c. 40A, § 5. It is undisputed that the board held a public hearing on the solar bylaw amendments on December 18, 2018, and made a report to Town Meeting, and that Town Meeting adopted the solar bylaw amendments by a 2/3 vote. The Individual Residents allege that the solar bylaw amendments are invalid because the board did not give the notice of its public hearing that is required by G.L. c. 40A and bylaw § 175-12.2.B. 





 General Laws c. 40A, § 5, provides that notice of the public hearing "shall be published in a newspaper of general circulation in the city or town once in each of two successive weeks, the first publication to be not less than fourteen days before the day of said hearing, and by posting such notice in a conspicuous place in the city or town hall for a period of not less than fourteen days before the day of said hearing." Id. The Town did exactly that, providing notice of the public hearing by publication and posting. That notice satisfies the requirements of G.L. c. 40A, § 5. The Individual Residents argue that they were entitled to notice of the public hearing as interested parties, as provided in G.L. c. 40A, § 11. Section 11 governs notice to interested parties for public hearings for individual permit applications, such as applications for special permits, variances, and findings under G.L. c. 40A, § 6. It has no application to a public hearing on a zoning amendment. The requirements for that public hearing are set by § 5. 





 The Individual Residents point to one flaw in the notice of the public hearing published by the Town: the notice stated that the hearing would be on Wednesday, December 18, 2018, when in reality December 18 was a Tuesday. This minor error does not invalidate the solar bylaw amendments. In Hallenborg v. Town Clerk of Billerica, 360 Mass. 513 (1971), the SJC considered whether a notice published one day less than the fourteen-day statutory requirement rendered a zoning amendment invalid. Id. at 515516. The SJC held that a court must consider whether strict compliance with a notice procedure was mandatory or only directory, and whether a minor noncompliance was significantly inconsistent with or prejudicial to the legislative objectives. Id. at 517. The one-day shortfall in notice did not render the zoning amendment invalid because there was nothing showing an intentional failure to provide notice and no prejudice. Id. Flexibility was "necessary with respect to notice of purely advisory proceedings before a town planning board on zoning by-law amendments," and such amendments should not be set aside because of "trivial procedural defects." Id. at 518. Here, the notice of the public hearing gave the correct date. Its error in describing the day of the hearing as falling on a Wednesday rather than a Tuesday is just such a trivial procedural defect that was not prejudicial. The notice of the public hearing satisfied the requirements of G.L. c. 40A, § 5. 





 Finally, the Individual Residents argue that the failure to give them individual notice of the public hearing violated the notice requirement set forth in bylaw § 175-12.2.B. Section 175- 12.2.B provides: "Notices of such hearing [on a bylaw amendment] shall be mailed to all property owners . . . included within or abutting land subject to amendment, abutting communities, and the Regional Planning Agency. General notice will serve where the proposed amendment is of universal or wide application in the Town." J.A. Exh. 5 at 175:77. No notice of the public hearing was mailed to the Individual Residents or any other property owners abutting the project site. Thus, the notice of the public hearing was deficient unless the solar bylaw amendments were "of universal or wide application in the Town." Id. 





 Interpretation of zoning bylaws is a question of law, not a question of fact, and the court interprets a zoning bylaw using ordinary principles of statutory construction. Shirley Wayside Ltd. P'ship v. Board of Appeals of Shirley, 461 Mass. 469 , 477 (2012); Framingham Clinic Inc. v. Zoning Bd. of Appeals of Framingham, 382 Mass. 283 , 290 (1981). "The court first looks to the statutory language as the principal source of insight into legislative intent." Chiu Wei-Chi v. Duxbury Zoning Bd. of Appeals, 28 LCR 534 , 536 (2020) (Speicher, J.), citing Shirley Wayside Ltd P'ship, 461 Mass. at 477. "When the meaning of the language is plain and unambiguous, the court enforces the statute according to its plain wording unless a literal construction would yield an absurd or unworkable result." Id., citing Commonwealth v. DeBella, 442 Mass. 683 , 687 (2004). If there is no explicit definition of a word or phrase used in a local zoning bylaw, the meaning of that word or phrase is to be determined using ordinary principles of statutory construction, including that the word or phrase is to be read in context of the whole bylaw. The word or phrase is to be given, to the extent practicable, ordinary meaning as derived from sources presumably known to the bylaw's enactors, such as their use in other legal contexts and dictionary definitions. See Commonwealth v. Zone Book, Inc., 372 Mass. 366 , 369 (1977). 





 The language of §175-12.2.B is unambiguous. It provides that owners of property affected by a zoning bylaw change and their abutters are to be given individual notice of the proposed amendment unless the amendment "is of universal or wide application in the Town." It distinguishes between two kinds of bylaw amendments: those particularly affecting specific property, and those of universal or wide application. Section 175-12.2.B further distinguishes between two kinds of general bylaw amendments: those of universal application in the Town and those of wide application. The intent of § 175-12.2.B, as set forth in its unambiguous language, is to distinguish between zoning amendments that are directed to a particular parcel or parcels of land within the town and those that are more general. For amendments directed to particular parcels, the owners and abutters are entitled to individual notice. Such individual notice, however, is impractical and unnecessary when the proposed amendment is of broad application in the town. Such a broad amendment could apply to the entire town, making it of universal application, or to a large section of town, making it of wide application. Thus, for example, an amendment proposing to rezone a parcel or group of parcels from a residential to a commercial zone would require notice to the affected properties and their abutters. On the other hand, an amendment adding a new use to a zone would be of universal application in its definition of the use and of wide application within the entire zone to which it was added. 





 The various provisions of the solar bylaw amendments were "of universal or wide application in the Town." J.A. Exh. 5 at 175:77, bylaw § 175-12.2.B. First, the solar bylaw amendments added a definition of "as-of-right siting" to the bylaw at § 175-22.1. J.A. Exh. 12; Facts ¶ 24. Second, the solar bylaw amendments added a sentence to the end of § 175-22.2.D to provide that "[a]s-of-right siting development may proceed as an allowed use without the need for a special permit, amendment, waiver or other discretionary approval." J.A. Exhs. 5, 11; Facts ¶¶ 25, 26. These two provisions are of universal application in the town. Next, the solar bylaw amendments deleted bylaw § 175-22.2.E, which had required a special permit for large-scale, ground-mounted solar within the Residential 80 or Residential 60 districts. It replaced this subsection with language pertaining to smaller-scaled ground-or-building-mounted solar installations, which are accessory structures. J.A. Exhs. 5, 11, 12; Facts ¶ 27. This provision is of wide application in the town: it applies to two entire zoning districts. Finally, the amendments added language to bylaw § 175-22.3 which referenced state-wide programs and stated that the applicable state and local wetlands protection statutes and bylaws would still apply. J.A. Exhs. 5, 11, 12. Facts ¶ 28. This provision is also of wide application in the town, as it applies anywhere that the wetlands statutes and bylaws apply in the town. 





 The Individual Residents point to one provision of the solar bylaw amendments' change to § 175-22.3, which provides that "installations which qualify as an Agricultural Solar Tariff Generation Unit (ASTGU) under the Massachusetts Department of Energy Resources Solar Massachusetts Renewable Target (SMART) program . . . located on cranberry bogs that are active at the time of the submittal of the application may be allowed within areas subject to the Massachusetts Wetlands Protections Act or any other Town Wetland Bylaw." J.A. Exh. 11 (emphasis supplied). As discussed, the court infers for the purposes of this motion that the cranberry bogs on Fairland Farm's property were the only active cranberry bogs in the Town at the time of the solar bylaw amendments. The Individual Residents argue that this means that this provision of the solar bylaw amendments, allowing ASTGUs located on cranberry bogs, applied to one property only, and therefore the board was obligated to give notice of the public hearing to

Fairland Farm and the abutters under § 175-12.2.B. 





 This provision does not apply to a single property. The language of the amendment provides that it applies to any cranberry bog "active at the time . . . of the application." J.A. Exh. 11. This is a general provision that can apply to multiple properties, not just the project site. Any cranberry bog that was active at the time of application submittal is covered by this provision. In other words, it is of "wide application in the Town." J.A. Exh. 5, bylaw § 175-12.2.B. No individual notice to Fairland Farms or the abutters was required under § 175-12.2.B. The notice of the public hearing was valid and effective, and, therefore, the adoption of the solar bylaw amendments by the town was valid and effective. 





 2. Spot zoning. The Individual Residents argue that the solar bylaw amendments constitute spot zoning because they single out the project site for favorable treatment. "Spot zoning occurs when there is a 'singling out of one lot for different treatment from that accorded to similar surrounding land indistinguishable from it in character, all for the economic benefit of the owner of that lot.'" Rando v. North Attleborough, 44 Mass. App. Ct. 603 , 606 (1998), quoting Whittemore v. Building Inspector of Falmouth, 313 Mass. 248 , 249 (1943). Whether the solar bylaw amendments constitute spot zoning "turns not on what parcel has been singled out, or even the effect on the parcel, but rather whether the change can fairly be said to be in furtherance of the purposes of the Zoning Act." W.R. Grace & Co.-Conn. v. Cambridge City Council, 56 Mass. App. Ct. 559 , 569 (2002). The provision is given every presumption in its favor, and the Individual Residents face the heavy burden of showing that the provision is arbitrary and unreasonable. If the provision's reasonableness is even fairly debatable, it must stand. Johnson v. Edgartown, 425 Mass. 117 , 121 (1997); Crall v. Leominster, 362 Mass. 95 , 101102 (1972); Andrews v. Amherst, 68 Mass. App. Ct. 365 , 369 (2007); National Amusements, Inc. v. Boston, 29 Mass. App. Ct. 305 , 309 (1990); see Bellis Circle, Inc. v. Cambridge, 21 LCR 373 , 376377 (2013) (Foster, J.), aff'd, 86 Mass. App. Ct. 1105 (2014). 





 In the first instance, the solar bylaw amendments do not single out an individual lot for favorable treatment. As discussed above, the solar bylaw amendments are more general, providing for as of right development of solar projects, including on any cranberry bogs in operation at the time of the application for site plan review. Even assuming that the solar bylaw amendments single out the project site, the amendments are "in furtherance of the purposes of the Zoning Act." W.R. Grace & Co.-Conn., 56 Mass. App. Ct. at 569. The Zoning Act expressly mandates that "[n]o zoning ordinance or by-law shall prohibit or unreasonably regulate the installation of solar energy systems or the building of structures that facilitate the collection of solar energy, except where necessary to protect the public health, safety or welfare." G.L. c. 40A, § 3. Allowing for as-of-right development with site plan review of solar energy systems in cranberry bogs serves the zoning purpose set out in § 3 to use zoning to protect and support solar energy generation. This includes using zoning to support "installations which qualify as an Agricultural Solar Tariff Generation Unit (ASTGU) under the Massachusetts Department of Energy Resources Solar Massachusetts Renewable Target (SMART) program." J.A. Exh. 11.





 Whether Town Meeting enacted the solar bylaw amendments with the intention of benefiting NextSun's proposal is irrelevant. "A court should not invalidate a legislative decision of a town based upon the alleged motive the town had in enacting the legislation. If the action is otherwise justified, the actual reason for the enactment, not to mention the motivation of the sponsors of the action, is not relevant" Andrews, 68 Mass. App. Ct. at 368 (citation omitted). What matters is whether the solar bylaw amendments can reasonably be said to be in furtherance of the purposes of G.L. c. 40A and the police power. They can and are. The Individual Residents have not met their burden to show that the solar bylaw amendments constitute spot zoning. 





 3. The ANR plans. The Individual Residents claim that the ANR plans were not lawfully endorsed because, as they argue in their memorandum of law, "[e]ndorsing the plans meant the Board was endorsing an invalid bylaw," referring to the solar bylaw amendments. Ind. Res. Mem. at 10. A so-called "approval not required" or "ANR" plan is one showing a division of land that does not meet the definition of a "subdivision" under the Subdivision Control Law, G.L. c. 41, § 81L. If the plan shows all of the new lots as having sufficient frontage on a public way, a way shown on an approved subdivision plan, or a way in existence at the time of the town's adoption of the Subdivision Control Law, then it is not a subdivision requiring an application and definitive subdivision plan approval. Id. Instead, 





 if the board finds that the plan does not require such approval, it shall forthwith, without a public hearing, endorse thereon or cause to be endorsed thereon by a person authorized by it the words 'approval under the subdivision control law not required' or words of similar import with appropriate name or names signed thereto, and such endorsement shall be conclusive on all persons. Such endorsement shall not be withheld unless such plan shows a subdivision. 





G.L. c. 41, § 81P. Thus, the Board's endorsement of the ANR plans was only a finding that the plans did not show a subdivision requiring approval under the Subdivision Control Law. Having made that finding, the Board had no discretion, but was obligated to endorse the ANR plans. The endorsement involved no consideration of the bylaw's application to the lots, the use of the lots, or the project to be built on the lots, and the Individual Residents have no standing to challenge the ANR plans on those grounds. Regan v. Planning Bd. of Braintree, 37 Mass. App. Ct. 956 , 957 (1994). 





 4. Board member O'Neil's participation in the public hearings. A member of a planning board may not vote on a zoning matter unless the member participated in all the public hearings on the matter. Mullin v. Planning Bd. of Brewster, 17 Mass. App. Ct. 139 , 141142 (1983). The only exception is that a planning board member may miss one meeting and still vote if the member files a written certification that the member has reviewed all the evidence received at the missed meeting. G.L. c. 39, § 23D(a). [Note 1] The Individual Residents claim that the site plan remand decision must be annulled because one of the Board members, Kevin O'Neil, was not a member of the Board at the time the Board considered the original application and issued the original decision, and therefore was not at the public hearings for the original application. Ind. Res. Mem. at 1922. Because, they argue, the Order of Remand provided that the Board could and did consider evidence from the public hearings on the original application, no member who was not at those hearings could validly vote on the amended application, as Mr. O'Neil did. 





 The public hearing on the amended application was not a continuance of the public hearing on the original application. The public hearing on the original application was closed on April 2, 2019, after which the Board voted on the original decision. NextSun appealed that decision in case no. 19 MISC 000230. The Order of Remand of July 1, 2019, in that case provided: 





 The court, upon consideration of the parties' Joint Motion for Remand and for Stay of Proceedings, filed [J]une 26, 2019, hereby orders this case remanded to the Town of Norton Planning Board ("Board") so that the plaintiff NextSun Energy LLC ("NextSun") may submit to the Board a petition, in the form of a remand zoning petition, regarding its proposal for a large-scale, ground-mounted solar photovoltaic installation on approximately 60 acres of land off of Bay Road in Norton ("Revised Project") requesting site plan approval under Article XV of the Town of North Zoning Bylaw ("Bylaw") and whether the Revised Project needs, and meets the standards for, a floodplain overlay district special permit from the Board under Article XIII of the Bylaw (the "Remand Petition"). 





 NextSun shall file[] updated application with the Board no later than July 3, 2019, for the Remand Petition. The Board shall schedule a public hearing on the Remand Petition as soon as possible and no later than July 23, 2019. Notice of the public hearing shall be provided pursuant to G.L. c. 40A, § 11 and sent to all parties in interest. Any costs of advertising the public hearing shall be borne by NextSun. No new application fee shall be charged to NextSun for the Remand Petition. 





 In considering the Remand Petition, the Board shall reconsider the evidence presented in the proceedings on the original petition that is the subject of this action along with the Remand Petition and any new evidence presented as part of the Remand Petition. At the public hearing, NextSun may present evidence and testimony pertaining to the Remand Petition and the zoning relief requested in the Remand Petition. After the close of the public hearing, the Board shall consider all the evidence, including but not limited to the evidence presented as part of the proceedings of the original petition, the Remand Petition, and evidence presented during the public hearing. After consideration of all the evidence, the Board shall issue a written decision on the Remand Petition, with findings supported by the evidence, in accordance with the Bylaw and G.L. c. 40A, § 9 (the "Remand Decision"). The Board shall issue and file the Remand Decision with the Norton Town Clerk as soon as possible and no later than 90 days after the close of the public hearing. 





 The court shall retain jurisdiction of this matter for all purposes, including, but not limited to: (1) enforcing the terms and conditions of this Order of Remand, and (2) hearing any subsequent appeals. NextSun shall be entitled to appeal the Remand Decision pursuant to G.L. c. 40A, § 17. Any such appeal shall comply with the requirements of § 17, shall be filed as a Complaint after Remand, and shall be docketed as part of this action. Pending the Remand Decision, this action is STAYED. No further briefing on pending motions is required. 





 The Order of Remand ordered that NextSun file a new, updated application with the Board, and that the Board give notice of and conduct a new public hearing on the amended application. The Order of Remand provided that the Board, as part of its consideration of the amended application at this new public hearing, could and should consider any evidence presented during the public hearing for the original application. That evidence would be presented during this new round of public hearings and considered there. Contrary to the Individual Residents' argument, this does not mean that any of the Board members needed to have participated in the public hearing for the original application. The Board members were considering a new application at a new public hearing, in which some of the evidence would be what was presented at the previous public hearing. This procedure was entirely proper. See Gamache v. Acushnet, 14 Mass. App. Ct. 215 , 219 (1982) (rehearing so that all board members could participate in hearing was proper). 





 Thus, Mr. O'Brien's absence from the public hearing on the original application was irrelevant. He attended all the sessions of the public hearing on the amended application but for one. Before the vote on the amended application, he filed his certification under G.L. c. 39, § 23D(a), certifying that he had reviewed the evidence at the missed meeting. This was all he needed to do have lawfully voted on the site plan remand decision and the special permit remand decision. His vote was valid, and does not void the site plan remand decision. 





 5. The flood plain overlay district special permit. NextSun's amended application for the amended project was made under the solar bylaw amendments. Those amendments remained applicable to the amended project, notwithstanding the amendments' repeal, because the filing of the ANR plans froze the then-existing zoning, including the solar bylaw amendments. G.L. c. 40A, § 6. Under the solar bylaw amendments, the amended project is an as of-right use, subject only to site plan review. The solar bylaw amendments added a new sentence to the end of § 175-22.2(D): "As-of right siting development may proceed as an allowed use without the need for a special permit, amendment, waiver or other discretionary approval." J.A. Exhs. 5, 11. Facts ¶¶ 25, 26. Under the amended § 175-22.1, "As-of-right siting" included the following: 





 Development may proceed as an allowed use without the need for a special permit, amendment, waiver or other discretionary approval. As-of-right development for large-sale, ground-mounted solar photovoltaic system is subject to site plan review to determine conformance with the Norton Zoning Bylaw. 





J.A. Exh. 12. Facts ¶ 24. Thus, the amended application sought site plan review of the amended project. 





 The project site also lies within the flood plain overlay district, created by Article XIII of the bylaw. J.A. Exh. 5. The flood plain overlay district includes a requirement for a special permit for certain uses. The Board required NextSun to apply for a flood plain special permit. NextSun did so under objection. The Board granted site plan review in the site plan remand decision, but denied the special permit in the special permit remand decision. NextSun has appealed both decisions; the special permit remand decision is the subject of the cross-motions. 





 NextSun argues that it was not obligated to obtain a special permit under the flood plain overlay district because a "use allowed as of right cannot be made subject to the grant of a special permit." Prudential Ins. Co. of Am. v. Board of Appeals of Westwood, 23 Mass. App. Ct. 278 , 281 (1986). Here, the special permit requirement arises from an overlay district. Overlay districts are a valid zoning mechanism. Overlay districts do not amend the underlying zoning but rather supplement the underlying zoning regulations, subjecting property to two sets of zoning regulations: the underlying and the overlay zoning requirements. KCI Mgmt., Inc. v. Board of Appeals of Boston, 54 Mass. App. Ct. 254 , 259 (2002). The question is how the regulations of the flood plain overlay district interact with the as of right use of the underlying zoning district permitted under the solar bylaw amendments. 





 This is the precise question addressed in KCI Management. In that case, the plaintiff wished to construct twenty-three single-family homes in a section of Hyde Park where that use was allowed as of right. Id. at 255, 258. A part of the property was also within the Greenbelt Protection Overlay District (GPOD). The GPOD required a conditional use permit (the equivalent of a special permit under the Boston Zoning Code) for the plaintiff's development. Id. at 255. The plaintiff's building permit application was denied, and on appeal, the Board of Appeal upheld the building permit denial and denied the conditional use permit. The Superior Court reversed the Board of Appeal, and the matter was brought to the Appeals Court. Id. at 255257. 





 Given that the use was allowed as of right in the underlying zoning district and required a conditional use permit under the GPOD, the Appeals Court saw its task as to "look to the entire GPOD regulatory scheme to determine whether apparently conflicting provisions may be harmonized or whether . . . the provisions incorporating conditional use procedures must be invalidated." Id. at 259. Reviewing the conditional use permit procedures and requirements incorporated into the GPOD, the Appeals Court focused on the GPOD's requirement that the project be subject to site plan review. Id. at 261263. The court held that a regulatory regime subjecting the as-of-right use to site plan review was permissible because site plan review would "regulate the use but . . . not prohibit it." Id. at 263. The GPOD "'warrant[ed] no more than the imposition of reasonable conditions in connection with the approval of a site plan.'" Id., quoting Y.D. Dugout, Inc. v. Board of Appeals of Canton, 375 Mass. 25 , 31 (1970). In other words, the overlay district's permit requirement was valid "because it imposed only the equivalent of site plan review rather than requiring applicants to obtain discretionary special permits." Bernstein v. Planning Bd. of Stockbridge, 76 Mass. App. Ct. 759 , 770 (2010). 





 Applying KCI Management, this court looks to whether the as of right use of the amended project can be harmonized with the special permit requirement of the flood plain overlay district. The solar bylaw amendments provide that the amended project is allowed as of right. Their intent is to promote the development of solar energy generation in the Town. The flood plain overlay district is intended to help prevent emergencies and reduce costs and damage from flooding. J.A. Exh. 5, bylaw § 175-13.2. The overlay district sets forth a series of permitted uses within the district, and then provides that other buildings, structures and uses are subject to a special permit. Id. at §§ 175-13.4.B, C. The special permit is issued subject to two conditions or limitations: 





 (1) No permit shall be issued to fill or excavate in the floodway or to build a new structure or to substantially improve an existing structure in the floodway; 





 (2) In Zones A and AE, the proposed use, including filling or excavating, when combined with all existing uses, shall not increase the water surface elevation of the one hundred-year flood more than zero inch at any point. This is to be so certified to the Planning Board by a registered professional engineer upon application for the special permit. 





Id. at § 175-13.4.C. In the special permit remand decision, the Board applied not only these standards, but also the general standards for issuing a special permit, which include whether the use is socially or economically desirable, whether it would satisfy an existing need, whether its advantages outweigh any detrimental effects, whether there are other reasonable alternatives, and whether specific conditions could be imposed to minimize its detrimental effects. J.A. Exh. 5, bylaw § 175-10.10, Exh. 21. 





 The floodplain overlay district serves important goals, and applies even to as-of-right uses within the overlay district that risk increasing flood risks, including the amended project. The amended application was therefore required to obtain a special permit under the floodplain overlay district. The Board erred, however, in applying the general requirements for a special permit to the amended application. Doing so was exactly what is not permitted: subjecting an as of-right use to a discretionary permit. Prudential Ins. Co. of Am., 23 Mass. App. Ct. at 281. The Board was only entitled to apply the two conditions or limitations of § 175-13.4.C. In applying those conditions to the amended application, the Board could not deny the application. Rather, it was required to approve the amended application subject to those conditions, much in the way of a site plan approval. 





 This is consistent with the limitation on regulation of solar generation in G.L. c. 40A, § 3, which provides that "[n]o zoning . . . by-law shall prohibit or unreasonably regulate the installation of solar energy systems or the building of structures that facilitate the collection of solar energy, except where necessary to protect the public health, safety or welfare." Id. While § 3 does not necessarily bar subjecting a solar energy system to a special permit, it does limit the scope of any required special permit. In particular, a special permit for a solar generation facility 





 cannot unreasonably regulate, cannot impose conditions that go beyond statutory limits provided under § 3, cannot be used either directly or pretextually as a way to prohibit or ban the use, and cannot be used to allow the board any measure of discretion on whether the protected use can take place in the district, because to do so would be at odds with the penumbral protections that are provided under § 3. 





PLH LLC v. Ware, Land Court Misc. Case No. 18 MISC 000648 (Dec. 24, 2019) (Piper, J.), 2019 WL 7201712, at *3. The Board erred in denying the special permit, and the special permit remand decision must be annulled. 





 6. Effect on claims. As set forth above, the NextSun Summary Judgment Motion and the Town Summary Judgment Cross Motion will each be allowed in part and denied in part. The question is, based on this allowance and denial in part, what is the status of the various claims of the parties. The 230 complaint had two counts: a claim under G.L. c. 240, § 14A, and an appeal of the site plan remand decision and the special permit remand decision under G.L. c. 40A, § 17. The special permit remand decision will be annulled. A status conference will be set down to discuss the status of the 230 complaint in light of the annulment of the special permit remand decision, what further relief should be granted, and what the next steps with respect to the 230 complaint should be. The 564 complaint is the Individual Residents' appeal of the site plan remand decision under G.L. c. 40A, § 17. While many of the Individual Residents' claims for annulling the site plan remand decision have been disposed of in this memorandum and order, other claims remain open, including the issues surrounding the battery storage. The status of the 564 complaint will be discussed at the same status conference. 





 The 322 complaint, brought by the Individual Residents against the Town and NextSun, has three counts. Count I is brought under G.L. c. 240, § 14A, and makes the claims that the Board's public hearing on the solar bylaw amendments was not properly noticed and the solar bylaw amendments constituted spot zoning. As those claims have been disposed of in this memorandum and order, Count I will be dismissed with prejudice. Count III is brought under G.L. c. 41, § 81BB, and makes the claim that the Board's endorsement of the ANR plans was invalid. As that claim has also been disposed of in this memorandum and order, Count III will be dismissed with prejudice. Count II seeks a declaratory judgment under G.L. c. 231A, § 1, that the solar bylaw amendments are invalid because of the public hearing notice and that they are spot zoning, that the ANR plans did not freeze the zoning, and that the proposed battery system is prohibited under the bylaw. All of these claims have been disposed of in this memorandum and order, except for the battery claim. The Individual Residents' claims regarding the battery system are part of their appeal of the site plan remand decision in the 564 complaint. It is a longstanding principle that a plaintiff cannot bring a declaratory judgment claim in order to avoid a claim under G.L. c. 40A, § 17. Iodice v. Newton, 397 Mass. 329 , 333 (1986); see Colangelo v. Board of Appeals of Lexington, 407 Mass. 242 , 247 (1990). As the Iodice court explained, G.L. c. 40A, § 17, "does not specify the form of the action required to appeal from a special permit granting authority's decision. The present action is no less an appeal under c. 40A, § 17, because it takes the form of a G.L. c. 231A, declaratory judgment action." Iodice, 397 Mass. at 333. Because the remaining declaratory judgment claim is fully alleged and brought in the § 17 appeal of the 564 complaint, there is no reason for it to remain in Count II of the 322 complaint. Count II will be dismissed without prejudice, thereby disposing of the entire 322 complaint. 





Conclusion 





 For the foregoing reasons, the NextSun Summary Judgment Motion is ALLOWED in part and DENIED in part, and the Town Summary Judgment Cross Motion is ALLOWED in part and DENIED in part. The special permit remand decision is ANNULLED. Judgment shall enter dismissing Counts I and III of the 322 complaint with prejudice and dismissing Count II of the 322 complaint without prejudice. A Zoom status conference in the 230 complaint and the 564 complaint is set down for February 24, 2021 at 10:15 am. 





 SO ORDERED 





FOOTNOTES
[Note 1] The municipality needs to have voted to accept the provisions of § 23D. See G.L. c. 39, § 23D(b). The Town has accepted those provisions. 


 
 Home/Search 
 Land Cases by Docket Number
 Land Cases by Date 
 Land Cases by Name
 


 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.